UIHLEIN, RESPONDENT, *v.* CAPLICE COMMERCIAL CO., APPELLANT.

(No. 2,691.)

(Submitted June 14, 1909. Decided June 28, 1909.)

[102 Pac. 564.]

*Quieting Title—Foreign and Domestic Corporations—Powers and Privileges—Constitutional Provisions—Right to Maintain Action—Enforcement of Contracts—Statutes.*

Quieting Title—Evidence—Letters.
   1.   In an action to quiet title to certain real property, claimed by defendant to have been donated to it by a foreign brewing company, letters written by the latter to defendant's predecessor and answers thereto, which showed, in connection with other testimony, that the company bought and paid for the land and the building thereon, were admissible.

Foreign Corporations—"Carrying on" of Business—What does not Constitute.
   2.   *Held,* that the shipping of beer into the state by a foreign corporation and selling the same to a distributing agent did not constitute a carrying on of business in the state within the meaning of section 4413, Revised Codes, relating to the steps necessary for such a corporation before it can carry on business in Montana.

Same—Noncompliance with Statute—Right to Maintain Actions.
   3.   The failure of a foreign corporation to comply with the law authorizing such corporations to do business in the state did not deprive it of the right to maintain a suit to quiet title to real property claimed

by defendant as a donation. Its action in this respect was not an attempt to enforce a contract.

Same—Holding Property—Statutes—Applicability.

4.    *Held,* that section 3823, Revised Codes, declaring that a corporation cannot hold property in a county, or maintain an action in relation thereto, unless it has first filed a certified copy of its articles of incorporation in the office of the county clerk, applies to domestic corporations only.

Same—Privileges—Constitutional Provisions—Construction.

5.    The inhibition of the state Constitution (Art. XV, sec. 11), that no foreign corporation shall be allowed to exercise or enjoy within the state any greater rights or privileges than are possessed or enjoyed by corporations of the same or similar character created under the laws of Montana, is simply a limitation placed upon the legislature in enacting laws, and does not mean that the placing of a burden upon a domestic corporation shall have the effect of imposing a like one upon foreign corporations.

Same—Statutes—Validity—Who may Assail.

6.    It is only in cases where a foreign corporation is attempting to exercise or enjoy greater privileges than those possessed by domestic corporations expressly given to it by the legislative assembly contrary to the provisions of section 11, Article XV, of the Constitution, that its right to exercise the same may be questioned.

*Appeal from District Court, Silver Bow County; Geo. B. Winston, Judge presiding.*

Action by August Uihlein against the Caplice Commercial Company. Decree for plaintiff, and defendant appeals. Affirmed.

*Mr. John J. McHatton,* for Appellant.

The burden rested upon plaintiff to prove his title and right to possession. This is the rule in ejectment, and must necessarily be the rule in an action of this kind. (*Willis* v. *Wozencraft,* 22 Cal. 608; *Owen* v. *Fowler,* 24 Cal. 193; *Owen* v. *Morton,* 24 Cal. 373; 2 Greenleaf's Evidence, 331.) The defendant, being in possession, there is a presumption in its favor, and this presumption must be overcome by the plaintiff. (*People* v. *Leonard,* 11 Johns. 504; *Sullivan* v. *Dimmitt,* 34 Tex. 114.) There must also be a showing by plaintiff of his present right of possession. (*Kile* v. *Tubbs,* 32 Cal. 333; 2 Greenleaf's Evidence, 304.) The plaintiff, if he recover at all in ejectment, must recover upon the strength of his own title, and this must be true in an action of this kind. (*Watts* v. *Lindsay,* 7 Wheat. 158, 5 L. Ed. 423; *Busenius* v. *Coffee,* 14 Cal. 91.)

If it could be found, as claimed by the plaintiff, that the Schlitz Brewing Company was maintaining the icehouse in question for the benefit of itself in Montana, and was engaged in shipping beer which was to be stored in that house for its own benefit and not for the benefit of the John Caplice Company or the Caplice Commercial Company, we submit it would be doing business in this state. In *Bank of British North America* v. *Madison*, 99 Cal. 125, 33 Pac. 762, the judgment awarded the plaintiff was reversed because it had not complied with the law. (See, also, *Bank of British North America* v. *Alaska Imp. Co.*, 97 Cal. 28, 31 Pac. 726.)

Under section 11, Article XV, of the Constitution, no foreign corporation shall have any greater rights or enjoy any greater privileges than a domestic one. If a domestic corporation cannot purchase, or maintain or defend an action with reference to property, without compliance with the law, a foreign corporation cannot do so. The constitutional provision is plain and self-acting. (See *Sweeney* v. *Stanford*, 67 Cal. 635, 8 Pac. 444; *Seamans* v. *Zimmerman*, 91 Iowa, 363, 59 N. W. 290; *Rough* v. *Breitung*, 117 Mich. 48, 75 N. W. 147; *Bank of British Columbia* v. *Page*, 6 Or. 431; *Childs* v. *Hurd*, 32 W. Va. 66, 9 S. E. 362; *State* v. *Chicago, Mil. & St. P. Co.*, 80 Iowa, 586, 46 N. W. 741; *Crefeld Mills* v. *Goddard*, 69 Fed. 141; *Cary-Lombard Land Co.* v. *Thomas*, 92 Tenn. 587, 22 S. W. 743; *International Text-book Co.* v. *Pigg*, 76 Kan. 328, 91 Pac. 75; *Allen* v. *City of Milwaukee*, 128 Wis. 678, 116 Am. St. Rep. 50, 106 N. W. 1099, 5 L. R. A., n. s., 680.) The corporation must comply with the conditions imposed. (*State* v. *Fleming*, 70 Neb. 523, 529, 97 N. W. 1063; *United States Rubber Co.* v. *Butler Bros. Shoe Co.*, 132 Fed. 398; *Commonwealth* v. *Parlin etc. Co.*, 118 Ky. 168, 80 S. W. 791; *Coler* v. *Tacoma R. & P. Co.*, 65 N. J. Eq. 347, 103 Am. St. Rep. 786, 54 Atl. 413; *Hoskins* v. *Rochester S. & L. Assn.*, 133 Mich. 505, 95 N. W. 566; *Booth & Co.* v. *Weigand*, 28 Utah, 372, 79 Pac. 570; *State* v. *Standard Oil Co.*, 194 Mo. 124, 91 S. W. 1062; *Miller* v. *Monumental Sav. & L. Assn.*, 57 W. Va. 437, 50 S. E. 533; *Iowa Falls Mfg. Co.* v. *Farrer*, 19 S. D. 632, 104 N. W. 499.) The

certificate required by the statute may be filed at any time before the trial of the case.    (*Ward Land & Stock Co.* v. *Mapes,* 147 Cal. 747, 82 Pac. 426.)

*Messrs. Kirk, Bourquin & Kirk,* for Respondent.

MR. JUSTICE SMITH delivered the opinion of the court.

The complaint in this action alleges that at all times therein mentioned the plaintiff was the owner, and entitled to the possession, of lots 2 and 3, in block 16, of the Noyes and Upton Railroad addition No. 2 to the city of Butte, in Silver Bow county, and that the defendant, a Montana corporation, claims an interest therein adverse to plaintiff.    The prayer is that the defendant be required to set forth the nature of its claims; that the plaintiff be decreed to be the owner of the premises, and the defendant adjudged to have no interest therein.    Defendant for answer denied all of the allegations of the complaint, save that it is a corporation, and as an affirmative defense alleged that it has been the owner and in possession of the premises since July 1, 1893; that since that date it and its predecessors have been in the absolute, actual, exclusive, open, notorious, continuous, and adverse possession, claiming to own the same; "that in order to induce the John Caplice Company, the defendant's predecessor in interest, to handle its product (beer) exclusively, the Schlitz Brewing Company, a Wisconsin corporation, procured the land described in the complaint, and donated it and induced the said John Caplice Company to make buildings and improvements thereon, and that it contributed thereto for and in consideration of the said John Caplice Company exclusively handling and selling its product; and that the defendant succeeded to all rights with reference thereto in the handling and sale of the product of said corporation which were held by said John Caplice Company, and the said Schlitz Brewing Company gave it the exclusive sale of its product in and about the city of Butte, and assented to the transfer of said property and property rights by the John Caplice Company to it and donated

the same to the defendant; that the said John Caplice Company and this defendant spent large sums of money in establishing a trade for the Schlitz Brewing Company's beer in and about the city of Butte, and in reliance upon the donation of said premises to the John Caplice Company and to it and on its purchase of the·same from the John Caplice Company." It is further alleged that the plaintiff is an officer of the Schlitz Brewing Company, and holds the title to the premises for the corporation, which has never complied with the laws of Montana authorizing foreign corporations to do business or hold property in this state. A reply was filed putting in issue the affirmative allegations of the answer. However, it was admitted at the trial that the plaintiff holds the title to the property in question simply as trustee for the Schlitz Brewing Company. The cause was tried to the court, a jury having been waived. No findings of fact were requested or made, and the court entered a judgment declaring all claims of the defendant to be invalid, decreeing the plaintiff to be the owner of the premises and entitled to the possession thereof, and that his title thereto be quieted against all claims of the defendant. From this judgment and an order denying a new trial, the defendant appeals.

It appears to have been assumed in the district court that the action is one in equity to quiet plaintiff's title. The defenses relied on in the answer are (1) that·the Schlitz Brewing Company donated the premises to the defendant's predecessor in interest; and (2) that the plaintiff cannot maintain the action for the reason that the Schlitz Brewing Company, the real party in interest, has not complied with the laws of Montana authorizing it to do business in this state. It is also contended by counsel that plaintiff cannot recover for the reason that the Schlitz Brewing Company has·contracted to allow the defendant to remain in possession until the expiration of the latter's charter, in any event. It was admitted at the trial that the record legal title to the premises was in the plaintiff, and that the Schlitz Brewing Company had never filed in the office of the Secretary of State or with the clerk of Silver Bow county,

or any county, a copy of its charter or articles of incorporation or any statement. No objection is made to the form or scope of the decree.

The court admitted in evidence a series of letters from the Schlitz Brewing Company to John Caplice & Co., one of the predecessors in interest of the defendant, and the answers thereto. These were objected to for the reasons that they were not properly identified, and that the letters of the brewing company were declarations in its own favor. We think the letters were properly admitted. They, in connection with other testimony, show that the Schlitz Brewing Company bought and paid for the ground in question, furnished the plans for the beer depot which was erected thereon and built the depot at its own expense, through the agency of the defendant's predecessor, John Caplice & Co., a corporation, which insisted upon and obtained credit on its account with the brewing company for all moneys expended by it for the land or upon the building. The transaction took place in 1892. The subject was initiated by a letter from the Schlitz Brewing Company to John Caplice & Co., dated Milwaukee, Wis., October 26, 1892, as follows: "We are in receipt of your favor of the 21st inst., and, as we note that the railroad insists upon our paying rent for the premises upon which the icehouse is to be built, we would prefer to purchase the property and own it ourselves. Please endeavor to buy the same for us at $2,400, or less if you can, and send us a plan of the lot showing the exact dimensions, giving the level of the railroad track and the street and the location of water and sewer. We will then have our architect make a plan for a substantial building in accordance with the suggestions which you will give us, and will endeavor to have the building completed as soon as possible." Under date of November 17, 1892, John Caplice & Co. wrote as follows: "We have completed purchase of lot for you as per instructions and have taken the liberty of drawing on you to-day for amount of purchase price, $2,400, and fee for recording deed $2.75, draft $2,402.75. The deed is now at the recorder's office and will be sent to you as soon as returned to us." And again, on Novem-

ber 28, 1892: "We inclose you herewith abstract of title and warranty deed to lot bought for you as per instructions." And with regard to the building (January 19, 1893): "We signed the agreement and bond as your agents.  *  *  *  We can secure an architect here for you, one who will see that the building is properly built." It appears that the beer was shipped f. o. b. Milwaukee, and therefore became the property of the defendant and its predecessor before it reached Butte.

In order to maintain its defenses that the property had been donated to its predecessor, and that it was entitled to the possession of the same in any event under its contract of agency for the sale of beer, the defendant introduced the testimony of Charles Dillman, in substance as follows: "My connection with the Schlitz Brewing Company began in December, 1892, in the capacity of traveling representative. I was traveling agent for the disposition of the product of their brewery and for making loans and closing contracts, and so forth. I first came to Butte in the early part of 1893. Then it was that my first relationship with the John Caplice Company began. I subsequently discovered that they changed their name to John Caplice & Co. I could not recall the month when that was, but it was in 1896. I remember when they ceased to do business under the name of John Caplice & Co. and took up the name of the Caplice Commercial Company. I know something about the details of that myself. I know about the organization. I was present at the time when they organized that company. I became interested in it about three months after the first steps were taken. At this initial meeting in October, 1897, it was understood and agreed that I would interest myself and become interested. The Joseph Schlitz Brewing Company did not know that. After we had agreed and the money was subscribed and the charter was in there or was sent to Helena, we all signed the agreement. Then came the question how long the agency of the Schlitz Brewing Company could be obtained. I answered: 'As long as the beer is paid for, or the goods paid promptly for, and the sales of beer increase, they can have the agency as long as their charter lasts.' As to whether or not I

had any authority from the Schlitz Brewing Company at that time to make a contract with the Caplice Commercial Company with respect to its right to purchase beer, I will say that there was no contract entered into at that time. I remember Mr. Caplice asking me how long the Caplice Commercial Company would be able to get the beer from the Schlitz Brewing Company. We had an understanding that the Schlitz Brewing Company would furnish them the beer at a mentioned price, and, if the payments and the sale increased, that they could have the agency for the length of their charter—twenty years. The sales of beer increased from 8,000 barrels a year to 22,000 barrels when the Schlitz Brewing Company took the agency away.''

Eugene Wuesthoff, the manager of the Schlitz Brewing Company, testified: ''Dillman's authority as a general rule was limited. His authority was to see the trade, the parties we were selling to as well as new trade, make sales on the basis of prices and terms furnished by the home office, his terms to be approved and corroborated by the home office. No one representing the Schlitz Brewing Company had any authority to make disposition of this property. The Schlitz Brewing Company made no contract either with John Caplice Company or its successor, the Caplice Commercial Company, for the handling of Schlitz products in Butte for any particular length of time. Mr. Dillman was never authorized to make any such contract. The Schlitz Brewing Company placed the beer depot at the disposal of the Caplice Commercial Company for the purpose of storing beer and to be used by the Caplice Commercial Company during the time they were buying beer from the brewing company. Our interest was to have the beer properly handled and properly treated to give satisfaction.'' It was also shown that the beer depot was burned in 1898 or 1899; that the cost of repairs was $2,000, which amount was paid by the Caplice Commercial Company and refunded by the Schlitz Brewing Company. The Schlitz Brewing Company also paid the taxes on the property.

Emmet Ryan testified that he was present when the Caplice Commercial Company was organized, and that nothing was said at the meeting concerning any time arrangement for the sale

of beer. Witness was secretary of the Caplice Commercial Company until 1903, and had no knowledge or information of any kind as to any time agreement or arrangement with the Schlitz Brewing Company, and had no knowledge that the Caplice Commercial Company claimed title to the beer depot.

Joseph Ledwidge testified that he was a former employee of the Caplice Commercial Company; that in 1903 the president of the company attempted to get from the Schlitz Brewing Company a reduction in the price of beer; that the Schlitz Brewing Company agreed to reduce the price, provided the Caplice Commercial Company would engage to handle no other beer for a period of five years, but, when the contract was prepared and sent to Butte, Mr. Dillman and Mr. W. A. Willoughby, two directors, refused to sign it "claiming that they would not tie themselves up with anyone."

W. A. Willoughby corroborated Ledwidge, and also testified that he was present at the time of the organization of the Caplice Commercial Company, and that he never heard of any "proposition concerning the time contract or arrangement for handling the product of the Schlitz Brewing Company" until the same was mentioned in an affidavit signed by Dillman, filed in one of the lawsuits growing out of the controversy.

Dillman testified in rebuttal that the reason he and Willoughby refused to sign the contract mentioned by Ledwidge was because there was a contract in existence; but Willoughby testified that the subject of another contract was never mentioned.

In view of the foregoing evidence, we are clearly of the opinion, not only that Dillman had no authority to give to the Caplice Commercial Company the agency for the sale of the Schlitz Brewing Company's products for any definite period of time, but that he did not attempt to do so. According to his own testimony, the language employed by him amounted simply to the expression of an opinion on the subject of inquiry by Caplice. This testimony falls far short of establishing a contract by the terms of which the defendant was to remain in possession of the beer depot until the expiration of its charter; and we find in the record no testimony whatsoever that would warrant the con-

clusion that the Schlitz Brewing Company had donated the ground in question or the improvements thereon to the defendant or any of its predecessors.

The contention that the plaintiff cannot maintain this action is not well founded. So far as the testimony shows, the Schlitz Brewing Company is not carrying on business in this state. Neither is it attempting to enforce any contract. In the case of *Powder River C. Co.* v. *Commissioners,* 9 Mont. 145, 22 Pac. 383, the court said: "We are of the opinion that the statute prohibits merely the carrying on of business, that the penalty for violating the law is that the acts and contracts in the course of such business are void; but the law does not deprive a foreign corporation of any right to sue, although the law may prevent the enforcement of any contract by such foreign corporations as refuse to comply with the law."

But it is contended that, as section 3823, Revised Codes, provides that "no corporation hereafter formed shall * * * hold property in any county in this state" without filing a certified copy of the copy of its articles of incorporation on file in the office of the Secretary of State, in the office of the county clerk of the county in which such property is situated, and cannot maintain an action in relation to such property, without complying with said provisions, the plaintiff, as trustee of the Schlitz Brewing Company, cannot maintain this action. Section 3823, *supra,* has reference solely to domestic corporations. What is said with reference to sections 3895 and 3908, Revised Codes, in the case of *Helena Power & Transmission Co.* v. *Spratt,* 35 Mont. 108, 88 Pac. 773, 8 L. R. A., n. s., 567, is equally applicable to section 3823. But, it is argued by appellant's counsel, assuming this to be true, if a domestic corporation cannot hold property or maintain an action in relation thereto, without first complying with section 3823, *supra,* a foreign corporation cannot, for the reason that, if the latter has this privilege, it enjoys greater rights than a domestic corporation under like circumstances; and he cites section 11, Article XV, of the state Constitution in support of his contention. That section reads in part as follows: "No * * * corporation formed under the laws of any other

\* \* \* state shall have or be allowed to exercise, or enjoy within this state any greater rights or privileges than those possessed or enjoyed by corporations of the same or similar character created under the laws of the state.'' Primarily, this constitutional provision is addressed to the legislative assembly. As was well said in the case of *South Yuba Water & Mining Co.* v. *Rosa*, 80 Cal. 333, 22 Pac. 222, discussing a statute similar to our section 3823, *supra:* ''Whether or not it is expedient that foreign corporations should be required to deposit record evidence of their incorporation in every county in this state where they have property, in like manner as domestic corporations are required to do, is matter for consideration for the legislature alone.'' . The constitutional provision relied on was intended to prohibit the passage of laws giving to foreign corporations the right to exercise or enjoy any greater privileges than those possessed or enjoyed by domestic corporations, and it is only in cases where a foreign corporation attempts to exercise or enjoy a right or privilege expressly given to it by the legislative assembly that its right to exercise the same may be questioned. The mere fact that a burden is placed upon domestic corporations from which foreign corporations are exempt does not operate to bring foreign corporations within the provisions of a law intended to apply solely to domestic corporations.

The circuit court of appeals for the eighth federal circuit in discussing this same constitutional provision in *First National Bank of Butte* v. *Weidenbeck*, 97 Fed. 896, 38 C. C. A. 131, said: ''The contention is that under this provision of the Constitution a statute imposing any duty or obligation on a domestic corporation which is not also imposed on foreign corporations doing business in the state is unconstitutional. The position is untenable. \* \* \* In the very nature of things, it is impossible to provide exactly the same system of laws for foreign as for domestic corporations. It is never done. The constitutional provision quoted contemplated no such thing. It is an inhibition against the grant of powers and privileges to foreign corpora-

tions that are not granted to, or cannot be enjoyed by, domestic corporations under like conditions.''

For some reason, presumed to be good and sufficient, the legislative assembly has seen fit to ordain that domestic corporations shall file in the office of the county clerk of the county in which they desire to hold property certain evidences of their incorporation. The penalty for failure to comply with the provisions of section 3823, *supra,* is that the corporation shall not maintain or defend any action or proceeding in relation to such property. In this connection it may be suggested that as the Schlitz Brewing Company was not doing business in this state, and had not, therefore, filed with the secretary of state an authenticated copy of its articles of incorporation as provided by section 4413, Revised Codes, then it would be impossible for it to comply with section 3823, *supra,* for the reason that that section makes it incumbent upon the corporations therein referred to, to file with the county clerk a copy of the copy of the articles of incorporation theretofore filed in the office of the Secretary of State. If the argument be followed to its logical conclusion, the result would be that this statute (section 3823) should be declared void because it places upon domestic corporations a burden not imposed on foreign corporations. We fail to see how such construction would assist the appellant, for the reason that only a domestic corporation which had failed to comply with the provisions of section 3823, *supra,* could take advantage of it. As was said in *First National Bank* v. *Weidenbeck, supra:* ''But if a foreign corporation were given greater rights and privileges in the state than were enjoyed by domestic corporations, it is not perceived how that fact would annul all laws in the state applicable to domestic corporations. * * * It (the constitutional provision) does not nullify all laws for the government of domestic corporations when those laws are not, and cannot be, applied to foreign corporations.'' If the appellant's position should be upheld, it would not be necessary for any corporation to comply with section 3823, *supra,* but appellant is not in a position to raise that question, for the reason, as heretofore stated, that section 3823 does not affect foreign corporations.

We think the foregoing disposes, directly and incidentally, of all points and suggestions made in the briefs and upon oral argument. We have read the testimony, and are satisfied that no court of equity could arrive at any different conclusion on the merits than did the district court of Silver Bow county, and the judgment and order are therefore affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.