EQUITABLE CREDIT COMPANY. *v.* ROGERS.

Opinion delivered October 31, 1927.

1. CORPORATIONS—FOREIGN CORPORATION DOING BUSINESS WITHIN THE STATE.—A foreign corporation which had an arrangement with a resident motor vehicle concern, whereby it in another State bought notes which were taken from purchasers of automobiles in this State, and which furnished blanks to the motor concern on which to make financial reports, *held* not doing business within the State.

2. CORPORATIONS—FOREIGN CORPORATION DOING BUSINESS WITHIN THE STATE.—A foreign corporation which has purchased in another State a note and contract of sale from a motor vehicle concern doing business within this State, in attempting to collect such note, was not doing business within the State, the attempt to collect the note being a mere incident to the original transaction.

Appeal from Phillips Circuit Court; *E. D. Robertson,* Judge; reversed.

*A. D. Whitehead,* for appellant.

*W. G. Dinning,* for appellee.

SMITH, J. The facts out of which the present litigation arises are very similar to those set out in the opinions in the cases of *Davis & Worrell* v. *General Motors Acceptance Corporation,* 153 Ark. 626, 241 S. W. 44; *Commercial Credit Company* v. *Blanks Motor Company,* 174 Ark. 274, 294 S. W. 999; and *Standard Motors Finance Company* v. *Mitchell Auto Company,* 173 Ark. 875, 293 S. W. 1026. The appellee in the first case mentioned and appellants in the others were foreign corporations engaged in the business of buying notes executed in this State, but payable in other States, given in partial payment of second-hand automobiles and motor trucks, the method of procedure of the corporations being practically the same in all cases.

The facts in the instant case may be summarized as follows: The Mott Motor Company, a motor car dealer at Elaine, Arkansas, on October 8, 1924, sold to Mrs. M. E. Van Lake a Ford touring car for the price, including "service charges," of $525.24, of which $131.54 was paid in cash and the balance was evidenced by the note of the

purchaser of even date with the contract of sale, for the sum of $394, payable to the Equitable Credit Company, hereinafter referred to as the company, at its office in New Orleans, Louisiana. The meaning of this service charge was shown in the opinion in the case of *Standard Motors Finance Company* v. *Mitchell Auto Company, supra.* The company was not interested in the business of the Mott Motor Company further than that it had an arrangement with that company whereby it bought certain notes from the Mott Motor Company which that company had taken from purchasers of cars, blanks being furnished to Mott Motor Company by the New Orleans Company for that purpose.

The purchasers of the cars were required to make a financial report on the blanks furnished by the New Orleans company to the Mott Motor Company, and these statements and contracts of sale, with the purchase money notes forming a part of them, were submitted to the New Orleans company, at its office in that city, for approval, and the company bought in New Orleans such of these notes as it pleased.

The note and contract of Mrs. Van Lake were forwarded by the Mott Motor Company to the office of the New Orleans company, where the purchase of the note and contract was completed by the remittance to the Mott Motor Company of the agreed price.

Mrs. Van Lake assigned her contract of purchase to Dr. J. R. Rogers, the written consent of the New Orleans company having first been obtained. Rogers made default in the payments of the installments of the purchase money note, which were to be made at the rate of $32.84 monthly, according to the allegations of the complaint which was filed by the company in the replevin suit brought to recover possession of the car.

Rogers defended on the ground, among others, that the facts out of which the transaction arose, and which will be stated in further detail, constituted the doing of business by the foreign corporation, which admitted that it had not complied with the laws of this State authoriz-

ing it to do business in this State. The cause was submitted to the jury upon this question only, and from the verdict and judgment in favor of the defendant Rogers is this appeal.

Exceptions were saved to the modification of certain instructions requested by the plaintiff company, which we do not discuss, for the reason that, in our opinion, the undisputed facts show that the appellant company was not doing business in this State, and that question should not have been submitted to the jury.

It was shown, upon the cross-examination of the managing officer of the company, that it maintained no office in this State, but that its representative entered this State from time to time to make collections of notes purchased, as the note of Mrs. Van Lake had been, and this representative "repossessed cars, moved cars that were repossessed, arranged for the sale and repair of cars surrendered by purchasers, or repossessed through legal procedure or otherwise."

Upon the authority of the case of *Davis & Worrell* v. *General Motors Acceptance Corporation, supra,* we hold that the facts recited do not constitute doing business in this State.

The facts of that case were that Davis & Worrell purchased from the Newport Foundry Company, at Newport, Arkansas, two motor trucks, and, after making a cash payment, executed their negotiable promissory note for the balance of the purchase money, the title being retained by the seller until the purchase money note was paid. The note was purchased by the foreign corporation for value, before maturity, at its office in Dallas, Texas. The corporation had no agency in this State, but bought commercial paper from about forty concerns selling motor vehicles in this State. It required the dealers from whom it bought notes to make financial statements, and the amount of credit extended to the dealer depended upon these statements. Blank forms of contract were furnished by the foreign corporation to the dealer from whom it contemplated the purchase of notes,

the statement being made on the back of each contract. The corporation made an investigation of the maker and indorsers of the paper submitted to it, through various commercial agencies, and then bought such of the paper as it pleased, the contracts of purchase being concluded at its office in Dallas. It was there said: "It is true that the furnishing of blank contracts to be used by the dealers in selling their motor vehicles and in purchasing the notes given for said motor vehicles tended to further the business of such dealers, but this did not make such transactions fall within the terms of the act. This would not be the controlling test. The test is, was the transaction of the business such that the corporation was, for the time being, through its agents or otherwise, within the State for the purpose of doing business?"

It thus appears that facts substantially the same as those existing in the instant case were held not to constitute doing business in the case quoted from. This being true, the subsequent conduct of the corporation in attempting to collect the note was a mere incident to the original transaction, which did not constitute doing business in this State.

At § 3982 of the chapter on Corporations, 14A, C. J., it was said:

"Incidental transactions. The courts are in agreement that transactions in a State by a foreign corporation of acts of business, whether commercial or otherwise, which are merely incidental to the business in which such corporation is ordinarily engaged, does not constitute the doing or carrying on of business within the meaning of statutes imposing conditions, restrictions, regulations, etc., on the right of foreign corporations to do business."

At § 3984 of the same chapter, 14A, C. J., page 1278, it was also said:

"Collection of debts, etc. The collection in a State by a foreign corporation of debts due it for goods sold or otherwise contracted does not constitute doing, transacting, carrying on or engaging in business within the

meaning of the statutes under consideration; nor does the acceptance in a State of evidence of such debts, or the taking of security therefor, come within the meaning of such statutes. The same is true of the action of a corporation in a State in adjusting or compromising such debts.''

Several Arkansas cases are cited in the notes to each of these sections which sustain the text quoted.

The opinion delivered this date in the case of the *Linograph Co.* v. *Logan, ante* p. 194, may be consulted for a further discussion of this feature of the case.

It follows therefore that the court was in error in submitting to the jury the question whether the plaintiff company was engaged in doing business in this State, and for this reason the judgment will be reversed, and the cause remanded for a new trial.