STATE ex Rel. AMERICAN LAUNDRY MACHINERY CO. et al., Relators, v. DISTRICT COURT et al., Respondents.

(No. 7,385.)

(Submitted November 16, 1934.   Decided December 19, 1934.)

[41 Pac. (2d) 26.]

*Mr. W. D. Kyle,* for Relators, submitted a brief and argued the cause orally.

*Mr. T. J. Davis* and *Mr. L. C. Myers,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an original proceeding; an application for a writ of prohibition made in behalf of the American Laundry Machinery Company, a corporation, George W. Hilton and J. T. McCunniff, to restrain the district court of Silver Bow county from proceeding with a cause, therein pending, wherein Taylor Laundry Company is the plaintiff and the named parties are defendants.

The record discloses that the American Laundry Machinery Company, hereinafter called the machinery company, is a corporation, organized under the laws of the state of Ohio, and that it has never qualified to do business as a corporation in the state of Montana; that neither of the other defendants, Hilton and McCunniff, are citizens of the state of Montana; that Taylor Laundry Company is a Montana corporation; and that on or before December 20, 1927, the machinery company sold certain machinery to the laundry company, and received a conditional sale contract and note executed by the laundry company. The contract reserved title in the machinery company.

On December 13, 1933, the machinery company instituted a claim and delivery action in the district court of Silver Bow county against the laundry company and Lalia S. Myers, seeking to recover the possession of certain laundry machinery sold under the contract. In due course the laundry company and Myers filed answers, and as a part thereof asserted a counterclaim against the machinery company for damages growing out of the sale of the laundry machinery. The machin-

ery company interposed a demurrer to the answers and counterclaim, and relied upon the proposition that the counterclaim could not be interposed in a claim and delivery action. The demurrers were argued to the Honorable T. E. Downey, Judge, and were by him overruled. Thereafter the laundry company filed a disqualifying affidavit against Judge Downey, and the Honorable John Hurly, a judge of another district, was called in to preside at the trial of the action. The laundry company and Myers offered evidence in support of the counterclaim but were met with objection on the part of the attorney for the machinery company. The objection was sustained and the counterclaim went out of the case.

John T. McCunniff and George W. Hilton came to Montana to testify at the trial of the cause, and did so testify. After the ruling on the counterclaim the laundry company instituted a new action against the machinery company, Hilton and McCunniff. Service of process was made in the courtroom before the end of the trial. Hilton and McCunniff were personally served in their own behalf, and service was made upon McCunniff for the machinery company. The parties thus served made special appearance and moved to quash and set aside the service of summons. This matter was heard by the court upon affidavits and the records and files of the court. No oral testimony was taken, or at least none has been certified to this court. Affidavits were made by W. D. Kyle, attorney for the machinery company, Hilton and McCunniff, and by Hilton and McCunniff in their own behalf and in behalf of the corporation, and by the deputy sheriff who served the process, and on behalf of the laundry company by L. C. Myers, an officer and attorney for the laundry company.

Kyle testified that the machinery company is a foreign corporation without any managing or business agent, cashier or secretary, or any officer within the state of Montana, or any agent appointed by it to receive service of process; and that Hilton was not a resident of the state of Montana but resided in the state of California, from whence he had come to Butte, Montana, at the direction of the machinery company, to at-

tend the trial and to testify as a witness in behalf of the machinery company, and for no other purpose. Hilton himself testified that he came to Montana specifically and only to testify in the cause. It appeared that Hilton was formerly a traveling salesman for the machinery company in the state of Montana, but at the time of the trial resided at Oakland, California, and traveled for the machinery company out of the San Francisco office, and that Montana was no longer in his territory.

McCunniff testified that for years prior to the trial, and at the time thereof, he resided in Seattle, Washington, at which city he is branch manager of the machinery company. His affidavit does not disclose the extent of the territory over which his jurisdiction as such branch manager extends. However, the affidavit of L. C. Myers, which is not contradicted, recites that McCunniff informed affiant that he was the branch manager of the machinery company with headquarters at Seattle, and as such manager had charge of territory including the states of Washington, Oregon, Montana, Idaho and in Alaska, and that as such manager he frequently came to the state of Montana in the interests of the machinery company.

While McCunniff did not deny the allegations of the Myers affidavit, he asserted that the particular trip in question was made solely to attend the trial of the action. The language of his affidavit best expresses his purpose, and was as follows: "That affiant for years prior to said trial as also during said trial resided and still resides in Seattle, Washington, at which city he is branch manager of said The American Laundry Machinery Company; that upon the date of said trial being fixed affiant was directed and requested by said The American Laundry Machinery Company to proceed to Butte, Montana, said place of trial, to assist in the presentation of its case as also to testify to such facts within his personal knowledge as were proper in the establishment of its right to recover, and in disproof of claims asserted by the defense in said action," etc. He further asserted that he came to Montana for no other purpose than that indicated.

There is some matter in the Myers affidavit to the effect that both Hilton and McCunniff expressed the intention of enjoying a vacation and doing some fishing in Montana and the adjacent national parks after the close of the case, and that one or both did proceed to Yellowstone National Park before returning to their respective headquarters.

It will be observed that under the state of the pleadings at the time of the commencement of the trial of the original action in the district court, the demurrer to the counterclaim had been overruled, and that Hilton, McCunniff and the corporation were prepared to meet the issues in that respect. When, as the trial proceeded, the counterclaim went out of the case, the new action was begun. This action reasserted the acts pleaded in the counterclaim and tendered them by way of a new action. The new action then was only the substitution of the counterclaim.

In our view of the case, there are three propositions to be decided, as follows: (1) The sufficiency of the service upon the machinery company, aside from the question of immunity; (2) the question of the immunity of the machinery company from the service of summons upon it as defendant in the last action in the district court; and (3) were McCunniff and Hilton immune from service of process in the new case in view of the circumstances of their presence in the state of Montana?

It is obvious that the first question—that of the sufficiency of the service upon the machinery company—is of prime importance and must be decided in any event. If the machinery company was not properly served, aside from the question of its claimed immunity from service, then, of course, the question of its special immunity becomes of no moment. It was admittedly a foreign corporation, organized under the laws of the state of Ohio. It had never qualified under our laws as a foreign corporation, under Chapter 41, Part III, of our Codes (sec. 6651 et seq., Rev. Codes 1921). It had no designated agent upon whom service of process could be made. It had no office or place of business in the state and,

as far as shown by the record, owned no property in Montana, aside from the property involved in this litigation. Of necessity, then, if it could be sued in Montana at all, service could only be made in accordance with subdivision 2 of section 9111, Revised Codes of 1921. That subdivision of the statute reads as follows: "The summons must be served by delivering a copy thereof, as follows: * * * 2. If the suit is against a foreign corporation, or a nonresident joint stock company or association, doing business and having a managing or business agent, cashier, or secretary within this state, to such agent, cashier, or secretary, or to a person designated as provided in section 6652 of the Civil Code."

The service of summons was made upon McCunniff as the representative of the corporation. If the court acquired jurisdiction over the corporation, it did so by virtue of that service. Therefore, under the above-quoted portion of the statute (sec. 9111) two questions are presented for our determination, viz.: 1. Was the company doing business in this state, and, 2, if so, was McCunniff its managing or business agent, cashier or secretary within this state?

As we view the case, the second of these questions is dependent upon, and foreclosed by, a determination of the first.

It is practically impossible to give a definite and comprehensive definition of the term "doing business in the state." (Bower on Process and Service, p. 485.) In the case of *St. Louis S. W. R. R. Co.* v. *Alexander,* 227 U. S. 218, 33 Sup. Ct. 245, 57 L. Ed. 486, it was held that, "In general it may be said that the business must be such in character and extent as to warrant the inference that the corporation has subjected itself to the jurisdiction and laws of the district in which it is served and in which it is bound to appear when a proper agent has been served with process." Isolated transactions do not constitute a doing of business within the meaning of the statute; it contemplates a more or less continuing course of business. (*General Fire Extinguisher Co.* v. *Northwestern Auto Supply Co.,* 65 Mont. 371, 211 Pac. 308; *Pittsburgh & Shawmut Coal Co.* v. *State,* 118 Misc. 50, 192 N. Y. Supp.

310; *Home Lumber Co.* v. *Hopkins,* 107 Kan. 153, 190 Pac. 601, 10 A. L. R. 879; *Walton N. Moore Dry Goods Co.* v. *Commercial Ind. Co.,* 276 Fed. 590.)

A foreign corporation which makes merely a single sale of its product in the state does not transact business in the state within the meaning of the foregoing corporation statute. (*Vermont Farm Mach. Co.* v. *Ash,* 23 N. M. 647, 170 Pac. 741; *Denison* v. *Phipps,* 87 Okl. 299, 211 Pac. 83.)

Applying these rules to the instant case, it is evident that the single transaction wherein the machinery company sold machinery to the Taylor Laundry Company is not of itself sufficient to constitute "doing business" in this state by the machinery company. It becomes important, then, to know whether the machinery company was in the habit of doing business in this state. Was it transacting other business in Montana, so that it could be said to have been carrying on a continuous course of business here?

In the affidavit of L. C. Myers it is stated that McCunniff "frequently comes to the state of Montana in the interest of the American Laundry Machinery Company." It further appears in the same affidavit that, "The American Laundry Machinery Company has, over a period of years, sold many thousands of dollars' worth of machinery in the state of Montana." This is the only evidence in the record here of any business done by the machinery company in this state, other than the single transaction involved in the instant case. In our opinion, it is not sufficient to satisfy the requirement of the provision "doing business in this state," as used in the statute. (Sec. 9111, supra.)

In the case of *General F. E. Co.* v. *Northwestern A. S. Co.,* supra, this court had occasion to pass upon the term "doing business in the state," as used in sections 6651 and 6653, Revised Codes of 1921. Those statutes relate to the requirements with which a foreign corporation must comply in order to do business in this state, and the penalty for a failure to comply with them. The court there quoted with approval the following excerpt from 9 Fletcher's Cyclopedia Corporations,

section 5919: "It has been said that 'doing business' implies, in this connection, corporate continuity of conduct in that respect, such as might be evinced by the investment of capital in the state, with the maintenance of an office for the transaction of business and those identical circumstances which attest the corporate intent to avail itself of the privilege to carry on a business." After referring to a number of authorities, the court concluded by saying: "We entertain the view that isolated transactions, whereby a foreign corporation sells goods or other manufactured products on sample or specifications, the same being fabricated in another state and shipped into this state by such corporation for use or installation, does not constitute the doing of business in this state, within contemplation of the statute."

As we have already pointed out, the court in that case was dealing with a different statute from that with which we are concerned here. However, we are unable to find that the meaning of the term "doing business in the state," as used in sections 6651 and 6653, is any different from its meaning as used in section 9111. In fact, it seems to us that the meaning of that phrase, as used in the various sections referred to above, must necessarily be the same in each instance. This conclusion is fortified by the fact that there are numerous cases dealing with the same question that is involved in the instant case, which have applied the same meaning to the phrase "doing business in the state" which this court gave to it in the case of *General F. E. Co.* v. *Northwestern A. S. Co.,* supra. (See *Walton N. Moore Dry Goods Co.* v. *Commercial I. Co.,* supra; *Hunau* v. *Northern Region Supply Corp.* 262 Fed. 181; *Sunrise Lumber Co.* v. *Homer D. Biery Lumber Co.,* 195 App. Div. 170, 185 N. Y. Supp. 711; *Hulick* v. *Petroleum Corporation of America,* 198 App. Div. 359, 190 N. Y. Supp. 377; *Jameson* v. *Simonds Saw Co.,* 2 Cal. App. 582, 84 Pac. 289.)

It is manifest that the discussion of the subject contained in the case of *General F. E. Co.* v. *Northwestern A. S. Co.,* supra, is persuasive here. We conclude that the machinery

company was not "doing business in this state," within the meaning of section 9111, supra.

Having arrived at this conclusion, we also hold that Mc-Cunniff was not a "managing, or business agent, cashier or secretary within this state," within the meaning of the statute (sec. 9111). The service of summons upon him was not a sufficient service upon the machinery company (within the meaning of section 9111) to subject it to the jurisdiction of the court in this state.

The case of *International Harvester Co.* v. *Kentucky*, 234 U. S. 579, 34 Sup. Ct. 944, 58 L. Ed. 1479, has been urged as in conflict with the theory here adopted that the machinery company was not doing business in Montana, within the purview of the statute, so as to make the service good. One of my associates leans heavily upon that case and quotes excerpts from it. In that case the Supreme Court of the United States said: "It has been frequently held by this court, and it can be no longer doubted that it is essential to the rendition of a personal judgment that the corporation be doing business within the state (*St. Louis S. W. Ry.* v. *Alexander*, 227 U. S. 218–225, 33 Sup. Ct. 245, 57 L. Ed. 486, and cases cited), and it was said in that case each case must depend upon its own facts and their consideration must show that the essential requirement of jurisdiction has been complied with and that the corporation is actually doing business within the state." After discussing the facts peculiar to the case under consideration and holding that the International Harvester Company was doing business in Kentucky, the court then called attention to the fact that it was argued that the holding was in direct conflict with the case of *Green* v. *Chicago, B. & Q. R. Co.*, 205 U. S. 530, 27 Sup. Ct. 595, 51 L. Ed. 916, where a different result was reached. The court then declared that it had no desire to depart from the rule laid down in the last-mentioned case and, after a lengthy statement of the facts, proceeded to distinguish the two cases, and to vindicate the holding in each.

The facts in the *International Harvester Case,* above, are so different from the case at bar, that they cannot be said to be in point at all. There the company did a vast volume of business in the state of Kentucky, and otherwise proceeded so as to justify the court in the holding that it was doing business in that state. No such situation exists in this case. Here the machinery company had no office in Montana. It had no agent located in the state. These facts must be taken into consideration with the question of "doing business." The statute (subd. 2, sec. 9111, Rev. Codes 1921) contemplates both the matter of agency and the doing of business. In the light of the facts and circumstances of this case, we are led to the conclusion that the machinery company was not properly served in the state of Montana.

The machinery company contends that it was immune from service by virtue of the fact that it was in this state solely for the purpose of attending a trial, as a witness and party thereto. In view of what we have already said with respect to the sufficiency of the service upon the company, it will not be necessary to pass upon the question of the claimed immunity of the corporation.

The question of whether Hilton and McCunniff were personally immune from service does not require any lengthy discussion. There is some evidence (by way of affidavit) that they were in this state not only for the purpose of appearing as witnesses at the trial, but also for the purpose of enjoying a vacation. The fact remains, however, that they came to Montana to attend the trial as witnesses in the original case, and they were served with summons while they were so in attendance at that trial. Under the circumstances, they clearly came within the rule which grants immunity from service of process to nonresidents who come into this state solely for the purpose of serving as witnesses at a trial. (See *State ex rel. Lane* v. *District Court,* 51 Mont. 503, 154 Pac. 200, L. R. A. 1916E, 1079; *State ex rel. Coe* v. *District Court,* 73 Mont. 265, 235 Pac. 766; *State ex rel. Ellan* v. *District Court,* 97 Mont. 160, 33 Pac. (2d) 526.)

The motion to quash service should have been sustained. Let a peremptory writ issue requiring the district court to proceed in accordance with this opinion.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS and ANDERSON concur.

MR. JUSTICE ANGSTMAN, concurring in part and dissenting in part: I think my associates are in error in holding that the American Laundry Machinery Company is not doing business in Montana, within the meaning of section 9111, Revised Codes of 1921. The case of *General F. E. Co.* v. *Northwestern A. S. Co.*, 65 Mont. 371, 211 Pac. 308, is not controlling here. It is distinguishable on three grounds. In the first place that case dealt with the question whether the corporation was doing business which would subject it to statutes prescribing conditions to doing business in this state, and not whether it was doing such business as would render it amenable to service of process. That there is a wide difference in the two situations is recognized by the authorities. The difference lies in the fact that in the one case the commerce clause of the Federal Constitution has application, and in the other it has not. (See note in 60 A. L. R. 995, 996, and cases therein cited.) Secondly, in the *General Fire Extinguisher Case* the corporation had been a party to two isolated transactions only. Here it is shown that the company involved has, over a period of years, sold many thousands of dollars' worth of machinery in Montana. Hilton was formerly the traveling salesman for this state, but that position is now occupied by McCunniff, who frequently comes to Montana in the interests of the company. It thus appears, at least prima facie, that the operations of the company were continuous, having some permanence and continuity, as distinguished from isolated transactions. If this was not so, the company should have submitted proof to that effect in support of its motion. The record is not clear as to the exact method under which the agent operated in this state. That he had a wide discretion in attending to the business

of the corporation is apparent, since he was sent to Montana to prosecute the action in its behalf wherein the counterclaim was interposed against the company. He was the *alter ego* of the corporation.

I think the case is controlled by that of *International Harvester Co.* v. *Kentucky*, 234 U. S. 579, 34 Sup. Ct. 944, 58 L. Ed. 1479. In that case the foreign corporation maintained agents in Kentucky to solicit orders. At one time it had a certain designated principal place of business in that state, with a designated agent upon whom process could be served, but this agency had been revoked. The authority of the agents was in writing and specifically provided that they should not have any headquarters or place of business in Kentucky. Their authority was limited to taking orders subject to the approval of the general agent without the state. They had authority to receive money on debts due the company, but not to compromise claims. The instructions also stated to the agents that "anything that is done that places the company in the position where it can be held as having done business in Kentucky will not only make the man transacting the business liable to a fine of from $100 to $1,000 for each offense, but it will make the company liable for doing business in the state without complying with the requirements of the laws of the state. We will therefore depend upon you to see that these instructions are strictly carried out." The Supreme Court of the United States held that the corporation was doing business in Kentucky, saying: "Upon this question the case is a close one, but upon the whole we agree with the conclusion reached by the court of appeals, that the Harvester Company was engaged in carrying on business in Kentucky. We place no stress upon the fact that the Harvester Company had previously been engaged in doing business in Kentucky, and had withdrawn from that state for reasons of its own. Its motives cannot affect the legal questions here involved. In order to hold it responsible under the process of the state court, it must appear that it was carrying on business within the state

at the time of the attempted service. As we have said, we think it was. Here was a continuous course of business in the solicitation of orders which were sent to another state, and in response to which the machines of the Harvester Company were delivered within the state of Kentucky. This was a course of business, not a single transaction. The agents not only solicited such orders in Kentucky, but might there receive payment in money, checks, or drafts. They might take notes of customers, which notes were made payable, and doubtless were collected, at any bank in Kentucky. This course of conduct of authorized agents within the state in our judgment constituted a doing of business there in such wise that the Harvester Company might be fairly said to have been there doing business, and amenable to the process of the courts of the state."

Thirdly, in the *General Fire Extinguisher Case* it appeared that the principal business of the corporation was that of fabricating machinery. The record here does not show that the laundry machinery company has any other business than that of selling machinery. Much of that business, according to the record, is done in Montana. That being so, it follows that the company is doing business in Montana and that service upon its agent, McCunniff, in this state was service on the corporation (compare *American Asphalt Roof Corp.* v. *Shankland*, 205 Iowa, 862, 219 N. W. 28, 60 A. L. R. 986), unless the corporation was immune from service upon its agent, who was in attendance upon a trial as a witness in an action instituted by the company in this state.

I express no opinion on the question whether the corporation was immune from service of process under the circumstances, since that question is not discussed in the majority opinion.

I agree that the individual defendants were immune from service of process affecting them personally, while they were serving as witnesses.

Rehearing denied January 28, 1935.

Cause taken to Supreme Court of the United States by writ of certiorari March 12, 1935. Writ denied April 29, 1935.