STATE ex Rel. TAYLOR LAUNDRY CO., Relator, v. DISTRICT COURT et al., Respondents.

(No. 7,551.)

(Submitted March 24, 1936.   Decided May 6, 1936.)

[57 Pac. (2d) 772.]

*Mr. L. C. Myers,* for Relator, submitted a brief and argued the cause orally.

*Mr. W. D. Kyle,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is an original proceeding seeking a writ of supervisory control to annul and set aside an order of the district court of Silver Bow county quashing the service of summons in an action wherein Taylor Laundry Company was plaintiff and the American Laundry Machinery Company, a corporation, was defendant.

The action in question was begun in the month of May, 1935, and the summons was served in Silver Bow county on the 27th day of November, 1935. Following the service of summons, and within the time for appearance, defendant appeared specially by motion to quash and set aside the service of summons, upon the grounds that it was a foreign corporation organized

under the laws of Ohio; that it was not doing business within the state of Montana, and that it had no managing or business agent, cashier or secretary within this state; that the corporation had never complied with the statutory provisions relating to foreign corporations, and had appointed no agent pursuant to statute or otherwise within the state on whom service of process could be made; and that at the time of service, nor subsequently, the person on whom the process was served was not a managing or business agent, cashier or secretary of the corporation within the state of Montana or elsewhere. The motion was supported by the affidavit of one Hoes, the Laundry Machinery Company's branch manager residing in San Francisco, California, having complete charge of the business and affairs of the corporation on the Pacific Coast and in Montana. He stated in the affidavit that this corporation was organized under the laws of the state of Ohio; that its principal place of business was at Cincinnati; that as sales manager he had charge of and general jurisdiction over all branch offices in California, and Seattle, Washington, and over all salesmen traveling in the state of Montana. He further alleged that the defendant corporation in the action "has not and never at any time did have any managing or business agent, cashier, or secretary, or any officer, within the state of Montana," or any designated agent, upon whom service of process might be made; that the corporation has never done business within the state or qualified under the state laws relating to foreign corporations; that it maintained no office or place of business within the state and owned no property therein, or any investments, other than debts due from customers purchasing laundry machinery and equipment under conditional sales contracts. He further stated in his affidavit that J. R. Haynes, upon whom, as the representative of the corporation, process was served in this case, was a salesman traveling for the defendant and taking orders for machinery in some of the Pacific Coast states and in Montana; that "he is not now and never has been any managing or business agent of the corporation"; that he resided in Portland, Oregon, and had never resided in Montana; and

that the only business defendant has ever transacted in the state of Montana has been occasional sales of laundry machinery equipment made through traveling salesmen selling its commodities in interstate commerce.

Among the counter-affidavits filed in behalf of the Taylor Laundry Company was the affidavit of Mrs. J. K. Heslet, who averred that she, as one of the two supervisors of the Paul Clark Home, in Butte, purchased from the defendant, in August, 1933, a washing machine; that since her purchase she has repeatedly made requests of the company to service the machine; that on three occasions J. R. Haynes, whom she characterized as the company's "installation, field, and maintenance engineer," examined, adjusted and fixed the washing machine; that the replacement parts installed were purchased from the company; and that Haynes last examined and adjusted the machine on or about November 27, 1935.

L. C. Myers, attorney for the Taylor Laundry Company, and also its secretary and treasurer, filed his affidavit from which it appears that for a period of more than twenty years the Laundry Machinery Company through its agents and representatives solicited business from all the steam laundries in the state of Montana, and sold thousands of dollars' worth of machinery and replacement parts to more than a dozen laundries in the state; that the state of Montana has purchased from this company a substantial part of the machinery used in laundries of certain state institutions; that hospitals and private institutions have purchased machinery from the company; that the company frequently received machinery as part payment on new machinery purchased; that within Montana the company services both machinery sold and machinery already installed, demonstrates machinery and furnishes supplies and replacement parts; that for some time past one Tractcht, a representative of the Laundry Machinery Company, at intervals of about sixty days, has traveled about the state of Montana soliciting business, interviewing prospective customers, calling upon users of machinery sold by the company and adjusting

278

controversies; that Haynes, agent of the company, "contacts the laundries in the state of Montana, in person, fixes machinery sold, services machinery sold, supervises installation of machinery, employs local help and machinists when necessary, and makes adjustments."

Mr. Myers further asserted that Haynes in the year 1928 supervised the installation of a Monitor ironer in the Taylor Laundry in Butte, and supervised the removal of an Asher ironer and a Hercules ironer from the same laundry; that for approximately two years after the installation of the Monitor ironer Haynes made repeated trips to the laundry and examined, adjusted and repaired the ironer; that within the past year, and during an inspection trip in Montana, Haynes recommended the installation of additional fans for a drying tumbler in the Capitol Laundry in Helena—fans which were on his recommendation purchased from the defendant company; that within the same year Haynes visited the Cascade Laundry in the city of Great Falls, and supervised the adjusting and replacing of valves on a compressor previously sold to the laundry by the machinery company; that in the year 1928 Haynes assisted in moving the Ideal Laundry, in the city of Great Falls, from one building to another, and supervised the installation of machinery purchased by that concern from the machinery company; that among the machinery so installed was an unsatisfactory flatwork ironer, which under the supervision of Haynes was afterwards dismantled and removed.

In addition to these affidavits, there are affidavits of nine residents of this state who have been connected with laundry businesses for from nine to thirty years, and who in connection with their laundries have over a period of many years purchased from the company either laundry machinery itself or replacement parts for machinery already installed and bearing the name plate of the American Laundry Machinery Company.

Local counsel for the machinery company gave testimony corroborative of the statements made in the affidavit of Hoes,

the branch manager. The trial court sustained the motion to quash.

In a previous case and on the same cause of action in which plaintiff attempted to secure service of process upon defendant, the lower court denied a motion to quash, and afterwards this court granted a peremptory writ of prohibition against the district court's proceeding in the action. (*State ex rel. American Laundry Machinery Co.* v. *Second Judicial District Court,* 98 Mont. 278, 41 Pac. (2d) 26, 29.) In the previous case, however, the attempted service was on a different representative of the defendant company, and the showing made at the hearing on the motion to quash in that case was altogether unlike the showing made in this case; therefore it is necessary for us to give detailed consideration to the case now before us.

Section 9111, Revised Codes 1921, provides that a summons must be served by delivering a copy thereof, as follows: ''2. If the suit is against a foreign corporation, or a nonresident joint stock company or association, doing business and having a managing or business agent, cashier, or secretary within this state, to such agent, cashier, or secretary, or to a person designated as provided in section 6652 of the Civil Code.''

Under the facts in this case and under the quoted provision of the statute, two questions arise for determination, namely: (1) Was the company doing business in this state? and (2) If so, was Haynes a business agent of the corporation within the state?

In the case of *State ex rel. American Laundry Machinery Co.* v. *Second Judicial District Court,* supra, we said: ''It is practically impossible to give a definite and comprehensive definition of the term 'doing business in the state.' (Bower on Process and Service, p. 485.) In the case of *St. Louis S. W. R. Co.* v. *Alexander,* 227 U. S. 218, 33 Sup. Ct. 245, 248, Ann. Cas. 1915B, 77, 57 L. Ed. 486, it was held that: 'In a general way it may be said that the business must be such in character and extent as to warrant the inference that the corporation has subjected itself to the jurisdiction and laws of the district in

which it is served, and in which it is bound to appear when a proper agent has been served with process.' Isolated trans- actions do not constitute a doing of business within the mean- ing of the statute; it contemplates a more or less continuing course of business. (*General Fire Extinguisher Co.* v. *Northwestern Auto Supply Co.,* 65 Mont. 371, 211 Pac. 308, 310; *Pittsburg & Shawmut Coal Co.* v. *State,* 118 Misc. 50, 192 N. Y. Supp. 310; *Home Lumber Co.* v. *Hopkins,* 107 Kan. 153, 190 Pac. 601, 10 A. L. R. 879; *Walton N. Moore Dry Goods Co.* v. *Commercial Ind. Co.,* (D. C.) 276 Fed. 590.) A' foreign corporation which makes merely a single sale of its product in the state does not transact business in the state within the meaning of the foregoing corporation statute. (*Vermont Farm Mach. Co.* v. *Ash,* 23 N. M. 647, 170 Pac. 741; *Denison* v. *Phipps,* 87 Okl. 299, 211 Pac. 83.) ''

In the case of *People's Tobacco Co.* v. *American Tobacco Co.,* 246 U. S. 79, 38 Sup. Ct. 233, 235, Ann. Cas.. 1918C, 537, 62 L. Ed. 587, the Supreme Court of the United States declared: ''The question as to what constitutes the doing of business in such wise as to make the corporation subject to service of process has been frequently discussed in the opinions of this court, and we shall enter upon no amplification of what has been said. Each case depends upon its own facts. The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdic- tion, and is by its duly authorized officers or agents present within the state or district where service is attempted. (*Phila- delphia & Reading Ry. Co.* v. *McKibbin,* 243 U. S. 264, 37 Sup. Ct. 280, 61 L. Ed. 710; *St. Louis Southwestern Ry. Co.* v. *Alexander,* 227 U. S. 218, 226, 33 Sup. Ct. 245, Ann. Cas. 1917B, 77, 57 L. Ed. 486.)  *  *  *  As to the continued prac- tice of advertising its wares in Louisiana, and sending its soliciting agents into that State, as above detailed, the agents having no authority beyond solicitation, we think the previous decisions of this court have settled the law to be that such

practices did not amount to that doing of business which subjects the corporation to the local jurisdiction for the purpose of service of process upon it." (See, also, note, 60 A. L. R. 1030.)

The counter-affidavits filed by the Taylor Laundry Company disclose that the defendant engaged, not in occasional, isolated transactions, but in a continuous course of business, and that its representatives, when within the state, did something more than solicit sales of merchandise to be shipped into the state—that they adjusted, inspected, and repaired machinery which the company had theretofore sold, and accepted other and old machinery as part payment on the purchase price on new sales. The case, as now presented, comes within the rule announced by the Supreme Court of the United States in the case of *International Harvester Co.* v. *Kentucky*, 234 U. S. 579, 34 Sup. Ct. 944, 946, 58 L. Ed. 1479. There the court said: "Here was a continuous course of business in the solicitation of orders which were sent to another state, and in response to which the machines of the Harvester Company were delivered within the state of Kentucky. This was a course of business, not a single transaction. The agents not only solicited such orders in Kentucky, but might there receive payment in money, checks, or drafts. They might take notes of customers, which notes were made payable, and doubtless were collected, at any bank in Kentucky. This course of conduct of authorized agents within the state in our judgment constituted a doing of business there in such wise that the Harvester Company might be fairly said to have been there, doing business, and amenable to the process of the courts of the state."

The observations made by the California court in the case of *Milbank* v. *Standard Motor Construction Co.*, 132 Cal. App. 67, 22 Pac. (2d) 271, 272, are also pertinent here. The court said: "The continuous endeavor to service the engines of customers in order to correct their mechanical defects and increase their efficiency was a substantial and important branch of its ordinary business. It is apparent that the maintenance of such

a service does not logically fall within the category of a merely casual or incidental activity of defendant.'' (See, also, *State ex rel. Kerr Glass Mfg. Co.* v. *Superior Court,* 166 Wash. 41, 6 Pac. (2d) 368; certiorari to the Supreme Court of the United States denied, *Kerr Glass Mfg. Co.* v. *Superior Court,* 286 U. S. 532, 52 Sup. Ct. 640, 76 L. Ed. 1273.)

In the case of *Connecticut Mutual Life Ins. Co.* v. *Spratley,* 172 U. S. 602, 19 Sup. Ct. 308, 315, 43 L. Ed. 569, the court used language which, we think, is appropriate here, as follows: ''A vast mass of business is now done throughout the country by corporations which are chartered by states other than those in which they are transacting part of their business, and justice requires that some fair and reasonable means should exist for bringing such corporations within the jurisdiction of the courts of the state where the business was done out of which the dispute arises.''

In the previous case before this court it was not shown that the Laundry Machinery Company had done anything more than have its traveling agents call upon the laundry trade and solicit sales of machinery to be shipped into the state. In the present case the showing goes further, and although this case may be said to be close, in the light of the foregoing authorities and the facts before us, we are impelled to the conclusion that the Laundry Machinery Company was doing business in the state, within the meaning of the section of our Code providing the method of service of process upon a foreign corporation.

It is argued that in the previous case we held that in order for a corporation to be doing business within the state, it must have a resident business agent or officer. That, however, was not our holding. We said that the fact of having a resident agent and an established branch office was an important factor to be considered in the circumstances of the case, and we have no desire or intention to depart now from our statement in that regard. As we there said, each case involving this question is to be determined upon its own facts. The case of *Connecticut Mutual Life Ins. Co.* v. *Spratley,* supra, held that

although a foreign corporation had no resident agent, it was doing business within the state.

We shall now consider the question whether Haynes, the ■ party served, was a business agent of the corporation within the meaning of our statute.

Heretofore this court has not attempted to define a "business agent" within the meaning of our Code provision. The only identical statute elsewhere is section 411 of the California Code of Civil Procedure. In the case of *Doe* v. *Springfield Boiler & Mfg. Co.*, 104 Fed. 684, 686, the Circuit Court of Appeals for the Ninth Circuit gave the following construction to this provision: "The term 'business agent,' as used in the statute, does not mean every man who is intrusted with a commission or an employment by a foreign corporation. It does not mean every man who does any kind of business for a corporation. It may be said that every employee of a railroad corporation is in a certain sense an agent of the corporation. But it would be absurd to say that a brakeman employed by a corporation was a business agent upon whom service could be made because he performed some business for the corporation, or that an expressman regularly employed by a manufacturing corporation to deliver machinery to its customers is an agent upon whom service could be made under the provisions of the statute. The statute was never intended to include under the term 'business agent' every person who might incidentally or occasionally transact some business for a foreign corporation. Its meaning must be drawn from the general context of the language used. The business agent mentioned in the statute means one bearing a close relation to the duties of managing agent, cashier, or secretary of the corporation. It must be an agent who is appointed, designated, or authorized to transact and manage one or more distinct branches of business, which may be, and is, conducted and carried on by the corporation within the state where the service is made,—one who stands in the shoes of the corporation in relation to the particular business managed, conducted, and controlled by him for the corporation. To con-

stitute a managing or business agent upon whom service of summons could be made, the agent must be one having in fact a representative capacity and derivative authority, and not one created by construction or implication, contrary to the intention of the parties.'' This construction was approved by the California Court of Appeals in the case of *Jameson* v. *Simonds Saw Co.,* 2 Cal. App. 582, 84 Pac. 289. The court, however, in the concluding sentence of the quotation, did not intend to preclude a showing by a corporation's acts and conduct of its intention; otherwise a foreign corporation could avoid jurisdiction of state courts by a mere denial of the agent's authority. (*Milbank* v. *Standard Motor Construction Co.,* supra.) With reference to the determination of the agent's power and authority as applied to cases of this character, the true rule, we think, is correctly stated in the case of *Connecticut Mutual Life Ins. Co.* v. *Spratley,* supra, as follows: ''In such case it is not material that the officers of the corporation deny that the agent was expressly given such power, or assert that it was withheld from him. The question turns upon the character of the agent,—whether he is such that the law will imply the power and impute the authority to him; and, if he be that kind of an agent, the implication will be made, notwithstanding a denial of authority on the part of the other officers of the corporation.''

Under the circumstances of the case before us, and under the foregoing authorities, we hold that Haynes was a business agent of the Laundry Machinery Company.

Our statute does not demand that a foreign corporation business agent be a resident of the state; it requires that at the time service is made on him he must be within the state attending to the corporation's business. So held the Circuit Court of Appeals for the Ninth Circuit under the California statute, in the case of *Premo Specialty Mfg. Co.* v. *Jersey-Creme Co.,* 200 Fed. 352, 43 L. R. A. (n. s.) 1015.

It appears from the record that immediately prior to the service on Haynes, counsel for the Taylor Laundry Com-

pany called him on the telephone in a Butte Hotel, represented that he was one Kelly, a laundryman from Anaconda, inquired whether Haynes was in a position to serve him, and received an affirmative reply from Haynes. It is argued on behalf of the respondent court that such conduct amounted to artifice or fraud, inducing the agent to come within the jurisdiction of the court, and constituted an abuse of legal process within the rule recognized by this court in the case of *State ex rel. Ellan* v. *District Court*, 97 Mont. 160, 33 Pac. (2d) 526, 93 A. L. R. 865 (see, also, 21 R. C. L. 1275). That rule is without application here. The misrepresentation did not induce Haynes to come to the state of Montana and within the jurisdiction of the court.

It is ordered that a peremptory writ of supervisory control issue to the district court of Silver Bow county, directing the annulment and setting aside of the order quashing the service of summons in the case of *Taylor Laundry Company* v. *American Laundry Machinery Company*.

ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur.

MR. CHIEF JUSTICE SANDS: I concur in the foregoing opinion, but I take occasion to say that the opinion does not go far enough to suit me. Our statutes provide that all foreign corporations doing business in the state must file their articles of incorporation in the office of the secretary of state, pay a filing fee, and name an agent upon whom service of summons may be made. This corporation violated every provision of that law. A most liberal policy should be followed to permit service in such cases. The burden of proof should be upon the corporation to show that any one of their agents in the state upon whom service may be made was not authorized to accept service. Foreign corporations have too many advantages over competing domestic corporations, and they pay no fee nor taxes. Court decisions should remedy this discrimination as far as possible.