234

GREENE PLUMBING & HEATING CO., a Corporation, Plaintiff and Appellant, v. EDWARD MORRIS, JR., and EDNA MORRIS, husband and wife, Defendants and Respondents, and McLELLAND LUMBER CO., KEITH E. NORRIS and PATTON & LINTON, INC., a Corporation, Defendants and Appellants.

No. 10634

Submitted June 16, 1964. Decided September 1, 1964.
Rehearing denied September 25, 1964.

395 P.2d 252

Berg, O'Connell & Angel, Holter & Heath, and H. A. Bolinger, Jr., Bozeman, Charles F. Angel, Robert M. Holter and H. A. Bolinger, Jr., (argued), Bozeman, for appellants.

G. Page Wellcome (argued), Bozeman, Morrow & Nash, Bozeman, James H. Morrow, Jr., (argued), Bozeman, for respondents

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal by plaintiff, Greene Plumbing & Heating Co., and defendants, McLelland Lumber Co., Keith E. Norris, and Patton & Linton, Inc., from a judgment in favor of defendants, Edward Morris, Jr., and Edna Morris, husband and wife.

Plaintiff brought an action to foreclose a mechanic's lien on property belonging to defendants, Edward Morris, Jr., and Edna Morris, hereinafter referred to as defendant Morris. McLelland Lumber Co., Keith E. Norris, and Patton & Linton, Inc., are also seeking to foreclose mechanics' liens on the Morris property, and are cross-complainants in this action.

Plaintiff is a corporation duly organized and existing under the laws of the State of Idaho with its principal place of business in Idaho. Lindsey Construction Co., Inc., hereafter known as Lindsey, a defendant but not a party to the appeal in this matter, is also a corporation organized and existing under and by virtue of the laws of the State of Idaho with its principal place of business in Idaho. Defendants, McLelland Lumber Co. and Patton & Linton, Inc., are both Idaho corporations, and both sold and delivered, in the State of Idaho, materials to Lindsey resulting in the filing of liens and their appearance in this action. Keith E. Norris is doing business as an individual and in his own name.

None of the Idaho corporations were qualified to do business in Montana under section 15-1701, R.C.M. 1947, which requires foreign corporations "doing business" within the State of Montana to file certain documents with the secretary of state. Nor has there been any attempt to do so up to and including the date of trial. Defendants, Edward Morris, Jr., and Edna Morris, are husband and wife, and Edward Morris, Jr., is the owner of and in possession of the property sought to be foreclosed, Lots 12 and 13 in Block 25 of the original townsite of West Yellowstone, Montana.

On October 6, 1958, defendant Morris entered into a contract with Lindsey whereby Lindsey was to construct and equip a motel building on the Morris property in West Yellowstone. The motel was to consist of 27 motel units and one utility room. Thereafter, on October 8, 1958, Lindsey, the principal contractor, entered into a contract, in Idaho with plaintiff, whereby plaintiff agreed to furnish material and labor for the installation of 27 bathroom units for the sum of $16,800. It should be noted here that defendant Morris paid approximately all of the money owed on the contract with Lindsey to Lindsey.

Between October 15, 1958, and April 26, 1959, approximately six months, plaintiff completed performance of the contract for furnishing and installing the bathroom units in the motel building that was being constructed on defendant Morris's property by Lindsey. For this work the following payments were made by Lindsey to plaintiff during the course of the above work as partial payment on the contract: on November 12, 1958, the sum of $1,566.30, and on December 10, 1958, the sum of $8,500.

Plaintiff's amended complaint contains two causes of action, one based on the express contract between plaintiff and Lindsey, and one based on an implied contract between plaintiff and defendant Morris, whereby plaintiff furnished and installed plumbing fixtures of a reasonable value of $16,935 in

the motel building being constructed by Lindsey for Mr. and Mrs. Morris.

As to McLelland Lumber Co., hereafter known as McLelland, at the time the contract was entered into between Lindsey and defendant Morris for the construction of the motel, McLelland helped Lindsey figure the amount of materials needed for various parts of the motel. McLelland sold these materials and other materials to Lindsey of the total value of $12,734 and they were used in the construction of the motel. As a result of certain payments made by Lindsey to McLelland, McLelland's claims against defendant Morris were reduced to the sum of approximately $7,918.88, being the amount claimed in this action.

The claim of Patton & Linton, Inc., is for the sum of $456.12 for two orders of cement which was delivered to West Yellowstone and used in the construction of the motel.

Keith E. Norris's claim is for approximately $1,870.66 for furnishing and installing gypsum board in the motel; the contract for such transaction being made with Lindsey.

Thus, we have an action to foreclose mechanics' liens where the principal contractor, Lindsey, and three of the subcontractors, plaintiff, Greene Plumbing & Heating Co., McLelland, and Patton & Linton, Inc., had not qualified to do business within the State of Montana as foreign corporations at any time up to and including the date of trial. Additionally, it should be noted from the judgment roll that Lindsey, a codefendant and principal contractor, was not served by any of the cross-complainants which includes McLelland, Patton & Linton, Inc., and Keith E. Norris. The only appearance by Lindsey was a purported affidavit of service filed on behalf of plaintiff, acknowledging service of the amended complaint. The acknowledgment of service appears in the judgment roll and was objected to by defendant Morris upon the ground that the time and place of service did not appear in the acknowledgment other than in the jurat, and for this reason was insuf-

ficient under section 93-3018, subd. (4), R.C.M.1947, (now repealed, but in effect when this action was filed).

The problems arising from the instant case may be summarized as follows:

(1) Did the district court err in concluding that it had jurisdiction and power to adjudicate the liens of all parties, including plaintiff and the cross-complainants, and that it had jurisdiction over Lindsey Construction Co., the principal contractor?

(2) Whether the failure of plaintiff, Lindsey Construction Co., and the cross-complainants to qualify to do business within the State of Montana under section 15-1701, R.C.M.1947, renders the liens unenforceable?

(3) Were the Idaho corporations excluded from the necessity of qualifying to do business within the State of Montana because they were only engaged in interstate commerce and not intrastate commerce?

The initial consideration for this court is to determine whether the district court had jurisdiction and power to adjudicate the liens of all the parties, including plaintiff and the cross-complainants, and that it had jurisdiction over Lindsey. Defendant Morris contends that the appearance and waiver executed by Lindsey acknowledging receipt of the amended complaint filed by plaintiff is defective. We cannot agree with defendant Morris's contention. The instrument sufficiently complies with section 93-3018 (now repealed, but which was in effect when this action was filed) which provided as follows:

"Proof of the service of summons and complaint must be as follows:

"1. If served by the sheriff, his *certificate* thereof; or,

"2. If by any other person, his *affidavit* thereof; or,

"3. In case of publication, the *affidavit* of the printer or publisher of the newspaper, or his foreman or principal clerk, showing the same; and an *affidavit* or deposit of

a copy of the summons and complaint in the postoffice, if the same has been deposited; or,

"4. The written admission of the defendant.

"In case of service otherwise than by publication, the *certificate* or *affidavit* must state the time and place of service." (Emphasis supplied.)

The appearance and waiver is neither a *certificate* nor *affidavit* as referred to in the statute; rather, it is a written admission by Lindsey specifically admitting service upon it of plaintiff's amended complaint as provided by section 93-3018, subd. (4), supra, and subjecting Lindsey to the jurisdiction of the trial court in respect to plaintiff's action. The statute specifically states that where proof of service is made by *certificate* or *affidavit*, such certificate or affidavit must state the time and place of service, but that statute does not state that a written admission of service whereby a defendant subjects himself to the jurisdiction of the court must contain such information. It is true that it could be implied from reading the statute as a whole that a written admission by a defendant, like a certificate or affidavit, should contain the time and place of service, but if the statute is strictly followed on its language, it will be noted that the statute does not expressly state that the time and place of service must be contained in the written admission of service. We hold that counsel for plaintiff was reasonably justified in concluding that a written admission was not required to contain the time and place of service. Moreover, even if the admission of service was defective because it did not contain the time and place of service, it would be merely a technical error and not a prejudicial and reversible one.

A more serious question is presented by the failure of the cross-complainants, McLelland Lumber Co., Patton & Linton, Inc., and Keith E. Norris, to serve the principal contractor and co-defendant Lindsey. The question is whether such failure prevented the district court from acquiring jurisdiction over

the mechanics' liens sought to be foreclosed by the cross-complainants. In Monarch Lumber Co. v. Wallace, 132 Mont. 163, 166, 314 P.2d 884, this court said:

"* * * This court is committed to the view that ordinarily in a suit to establish a materialman's lien the principal contractor is an indispensable party. Pittsburgh Plate Glass Co. v. Culbertson Hotel Co., 62 Mont. 605, 205 P. 957. In that case the principal contractor had not been adjudged a bankrupt.

"It is worthy of note that in a case where no relief is sought against the principal contractor some courts hold that he is not an indispensable party. Among the cases so holding are the following: Cooper Mfg. Co. v. Delahunt, 36 Or. 402, 51 P. 649, 60 P. 1; Hand Mfg. Co. v. Marks, 36 Or. 523, 52 P. 512, 53 P. 1072, 59 P. 549; Didier v. Webster Mines Corp., 49 Nev. 5, [6], 234 P. 520; Hazard, Gould & Co. v. Rosenberg, 177 Cal. 295, 170 P. 612.

"However, so far as this case is concerned [where trustee in bankruptcy was made a party] and where the principal contractor has not been adjudged a bankrupt, we adhere to the view announced in the Pittsburgh Plate Glass Company case, supra, which also finds support in other cases. See Eberle v. Drennan, 40 Okla. 59, 136 P. 162, 51 L.R.A., N.S. 68, where it was so provided by statute, Godfrey Lumber Co. v. Kline, 160 Mich. 565, 125 N.W. 682; 36 Am.Jur., Mechanics' Liens, § 254, p. 158."

In the Monarch Lumber Company case, supra, this court made a distinction between the situation where the principal contractor is adjudged a bankrupt, in which instance, the trustee in bankruptcy must be made a party, and the situation where the principal contractor has not been adjudged bankrupt, in which instance he must be made a party. The court concluded that (depending upon whether the principal contractor was adjudged bankrupt or not) either the principal contractor or its trustee in bankruptcy had to be made a party

defendant in an action to foreclose a mechanic's lien. In the instant case neither was made a party because neither was served with process by the cross-complainants (there is nothing in the record which shows Lindsey was adjudged bankrupt). At the time of the filing of the cross-complaint former code section 93-3415, R.C.M.1947, which has been superseded by the new rules but which was in effect at that time, specifically provided for service of the cross-complaint upon co-defendants. (Also see Bancroft's Code Pleadings, § 505, p. 726, (1926).)

It should also be noted that this court has held that no judgment can be rendered or enforced in any case until the debtor is made a party to the proceeding, and the fact and amount of his liability judicially determined. Pittsburgh Plate Glass Co. v. Culbertson Hotel Co., supra; Missoula Merc. Co. v. O'Donnell, 24 Mont. 65, 60 P. 594, 60 P. 991; Gilliam v. Black, 16 Mont. 217, 40 P. 303. That Lindsey, the principal contractor, is a debtor cannot be denied in the instant case. It was Lindsey that contracted with the cross-complainants for the various materials to be furnished and the work to be done in the installation of such materials. The importance of making Lindsey a party to the cross-complaint can easily be seen when it is realized that it is necessary to adjudicate the amount of the indebtedness owed by Lindsey to the cross-complainants before any enforcement of the mechanics' liens can be had. It is only the amount owed by Lindsey to the cross-complainants that the latter can seek to recover from defendant Morris. For the foregoing reasons we conclude that the district court did not have the jurisdiction and the power to adjudicate the liens of the cross-complainants, McLelland Lumber Company, Keith E. Norris, and Patton & Linton, Inc., because of their failure to serve the principal contractor, Lindsey, with process.

Since we have previously decided that plaintiff, Greene Plumbing & Heating Co., did make a vaild service upon defendant Morris, we must now consider a further question in respect to plaintiff, i. e., whether Lindsey's or plaintiff's

failure to qualify to do business within the State of Montana under section 15-1701, R.C.M.1947, renders plaintiff's lien unenforceable. Before there can be a valid mechanic's lien, it is necessary that the lien rest upon a contract that is valid and enforceable, and that the contract, express or implied, be made with the owner or his duly authorized agent. Arnold v. Genzberger, 96 Mont. 358, 31 P.2d 296; Dewey Lumber Co. v. McQuirk, 96 Mont. 294, 30 P.2d 475, 36 Am.Jur., Mechanics' Liens, § 80, p. 66. Thus, it is necessary to find that the express contract between the principal contractor, Lindsey, and the owners, Mr. and Mrs. Morris, is valid and enforceable for it is clear to this court that a subcontractor can recover from the owners on such a contract. (Duignan v. Montana Club, 16 Mont., 189, 40 P. 294; Merrigan v. English, 9 Mont. 113, 22 P. 454, 5 L.R.A. 837; Morin Lumber Co. v. Person, 110 Mont. 114, 99 P.2d 206.) The right of recovery is based on the theory that by virtue of the contract between the principal contractor and the owners, there is an implied agency between the two, giving the principal contractor the authority to subcontract the work to others. (Merrigan v. English, supra.)

In Montana it is necessary that a foreign corporation which plans to "do business" as contemplated by section 15-1701, R.C.M. 1947, must qualify by filing certain documents with the secretary of state of Montana. Then section 15-1703, R.C.M. 1947, states as follows:

"If any foreign corporation shall *attempt or commence to do business* in this state without having first filed said statement, certificate, and consent, required by this act, or without complying with any or all of the laws of Montana relating to the payment of fees or licenses, *no contract made by such corporation, or any agent or agents thereof, during said time, shall be enforceable* by the corporation until the foregoing provisions have been complied with".

There is no dispute about the fact that neither Lindsey nor plaintiff had complied with section 15-1701, supra. However,

for this court to find that Lindsey and plaintiff, both foreign corporations, violated sections 15-1701 and 15-1703, supra, it is necessary to find that (1) Lindsey and plaintiff were "doing business" within Montana as contemplated by the above statutes, and (2) that they were not excluded from complying with the above statutes due to the fact of their activities being interstate commerce and not intrastate commerce.

 It is the general rule that a determination of what constitutes "doing business" within a state depends primarily upon state law. (Kansas City Structural Steel Co. v. State of Arkansas, for Use and Benefit of Ashley County, 269 U.S. 148, 150, 46 S.Ct. 59, 60, 70 L.Ed 204.) Plaintiff has attempted to bring itself within the rule set forth by this court in General Fire Extinguisher Co. v. Northwestern Auto Supply Co., 65 Mont. 371, 211 P. 308. See also State ex rel. American Laundry Machinery Co. v. Second Judicial District Court, 98 Mont. 278, 41 P.2d 26; State ex rel. Taylor Laundry v. District Court, 102 Mont. 274, 57 P.2d 772, 113 A.L.R. 1. In the General Fire Extinguisher Co. case the court stated as follows:

"We entertain the view that *isolated transactions,* whereby a foreign corporation sells goods or other manufactured products on sample or specifications, the same being fabricated in another state and shipped into this state by such corporation for use or installation, *does not constitute the doing of business in this state,* within contemplation of the statute." (Emphasis supplied.) General Fire Extinguisher Co. v. Northwestern Auto Supply Co., supra; 65 Mont. at 378, 211 P. at 310.

 To come within this rule it would be necessary that plaintiff and Lindsey show that they were selling goods or manufactured products on sample or specifications which are fabricated in another state and shipped into Montana for use or installation. However, when the facts of the instant case are viewed, it appears that Lindsey and plaintiff both furnished materials for and performed a construction contract

within the State of Montana, and under such circumstances the "isolated transaction rule" of the General Fire Extinguisher Co. case would not apply since the general rule is that corporations performing construction contracts are "doing business" even though they perform but a single contract, and therefore are subject to compliance with state laws regulating the doing of business by foreign corporations. (See Anno. 55 A.L.R. 726, entitled "Construction work by foreign corporation as doing business within the state.") At 23 Am.Jur., Foreign Corporations, § 380, p. 378, it is stated as follows:

"It is generally held that a foreign corporation which engages in doing construction work, as distinguished from engaging merely in installing an article sold, *although it engages in performing but a single construction contract, engages in business within the state* and, therefore, becomes subject to state laws regulating the doing of business therein by foreign corporations. *The performance of such work is not deemed to fall within the rule that a single or isolated transaction will not amount to doing business.*" (Emphasis supplied.)

In the instant case, the job took approximately six months and entailed the entire construction and fabrication of 27 motel units and a utility room within the State of Montana, all of which took a great many carpenters and laborers and necessitated an extremely large amount of materials. The construction contract was within the rule stated above in 23 Am.Jur., supra, both as to the principal contractor, Lindsey, and also as to the subcontractor, plaintiff. Lindsey employed many people to work on the motel in West Yellowstone and was present in the State of Montana for about six months doing the job as principal contractor. As to plaintiff, it performed its contract with Lindsey, supplying labor and material for installation of plumbing in the motel. During the six months, plaintiff's activities consisted of employing two men to install the plumbing (which included cutting and fitting

the pipe) at the motel, storing some of the plumbing fixtures in an ice house in West Yellowstone while working on the motel, and doing some outside sewer and water work for Edward Morris, Jr. Taking all of these activities together, we conclude that plaintiff was "doing business" as contemplated by section 15-1701, supra, as was Lindsey, also. (See 55 A.L.R. 726, supra.) The fact that plaintiff shipped the materials from Idaho, and did no other local business except for the work on the motel and the storage of some materials in an ice house in West Yellowstone, and also maintained no field office in Montana, is not sufficient to take plaintiff's activities outside the scope of the meaning of "doing business" under section 15-1701, supra, or to bring such activities within the "isolated transaction rule" pronounced by the General Fire Extinguisher Co. case, supra.

It should be noted that neither Lindsey nor plaintiff has made any attempt to comply with section 15-1701, supra, before or after the construction of the motel. Thus, it is not necessary to rule on whether subsequent compliance with the statute after the making and performing of the contracts would validate such prior dealings. (However, see Hutterian Brethren of Wolf Creek as a Church of Sterling, Alberta, Canada v. Haas, D.C., 116 F.Supp. 37 (1953).)

Since we have concluded that plaintiff and Lindsey were "doing business" as contemplated by the statutes regulating foreign corporations, it is now necessary to determine whether such business was intrastate or interstate. If plaintiff and Lindsey were engaged in interstate commerce, then it probably would not be necessary for either to qualify to do business under section 15-1701, supra. A state is without power to exact conditions or place burdens upon the exercise of interstate commerce. However, the fact that a foreign corporation engages in interstate commerce does not of itself preclude any and all regulation by the states in which the corporation operates. When corporate activities in a particular state be-

come purely local in character, they may properly be called "doing business" within that state and as such subject to legitimate state regulation. (See 20 C.J.S. Corporations § 1840, p. 56.) Where, however the activities are incidental to transactions in interstate commerce, they remain within the protection of the commerce clause of the Federal Constitution. There is no doubt in the court's mind that the activities of Lindsey and plaintiff were almost wholly "local" in nature. It can hardly be said that engaging in construction activity for a period of approximately six months was merely "incidental" to interstate commerce carried on by the two corporations. (See Kansas City Structural Steel Co. v. State of Arkansas, for Use and Benefit of Ashley County, supra. Cf. Minnehoma Financial Company v. Van Oosten (D.C.D.Mont. 1961) 198 F.Supp. 200; Graham and Ross Mercantile Co. v. Sprout, Waldron & Co. (D.C.D.Mont.1959), 174 F.Supp. 551; and Union Interchange, Inc. v. Parker, 138 Mont. 348, 357 P.2d 339.)

In conclusion we hold that Lindsey and plaintiff were in violation of section 15-1701, supra, for failure to qualify to "doing business" within the State of Montana, and that the contracts made by them to be performed in this state were unenforceable under section 15-1703, supra. Consequently, since it is necessary that a mechanic's lien be based on a valid and enforceable contract, plaintiff's mechanic's lien is unenforceable.

We have considered the remainder of specifications of error set forth by plaintiff and the cross-complainants and find it unnecessary to consider them in light of our holdings above. The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN CONWAY HARRISON, DOYLE and ADAIR, concur.