888

## TEL-PIC SYNDICATE, Inc. v. STATION WIBS.

### Civ. A. No. 6094.

United States District Court
Puerto Rico, San Juan Division.
Jan. 23, 1951.

H. S. McConnell, San Juan, Puerto Rico, for plaintiff.

Enrique Cordova Diaz, San Juan, Puerto Rico, for defendant.

ROBERTS, District Judge.

This is an action brought by Tel-Pic Syndicate, Inc., a New York corporation, against Station WIBS, a Puerto Rican corporation, seeking a declaratory judgment that an agreement entered into between them on August 23, 1950, is a valid contract binding on the parties. The plaintiff further sought certain injunctive relief.

The agreement, with respect to which declaratory judgment is sought, was in the form of a letter from the defendant to the plaintiff, dated August 23, 1950, wherein the defendant asserted its acceptance of the plaintiff's promotion plan for Station WIBS. This letter was signed for the defendant corporation through one Jose E. del Valle, its President and was "accepted" for the plaintiff corporation through one Stanley Grayson, its General Manager.

The agreement, in substance, provided that the plaintiff would conduct a publicity campaign for the defendant and would, through Grayson, as its representative, solicit business establishments in Puerto Rico to subscribe to a plan under which such business establishments would display within their premises an electric clock bearing the call letters and dial settings of the defendant's radio station and contract with the plaintiff for program time on said station. The clocks were to be furnished at no cost to the defendant. The defendant, on its part, "in return for the publicity to be gained through the Tel-Pic Syndicate plan", was to provide for each subscriber contracted by Grayson for the plaintiff three five minute programs a week for a period of one year. The number of subscribers to be so provided with program time was

limited to fifty. The program periods were to include an identification of the subscriber as sponsor of the program, a short musical program and a fifty word message advertising the subscriber's business.

The agreement contains no provisions for compensating the plaintiff, but an examination of the pleadings indicates that the plaintiff was, on some basis, paid by the subscribers to the plan.

On the same day, August 23, 1950, another letter, signed by del Valle as President of the defendant corporation, was delivered to the plaintiff. This letter, addressed "To Whom It May Concern", stated that Grayson, representing Tel-Pic Syndicate, Inc., of New York, would be general manager of the special publicity campaign for Station WIBS and explained the plan in some detail, particularly referring to the display of the electric clocks and the allocation of radio time to subscribers to the plan.

Thereafter, there apparently was some dispute as to the authority of del Valle to bind the defendant corporation and, on October 10, 1950, another letter signed by del Valle as President of the defendant corporation was given to the plaintiff. This letter, in substance, purported to be a ratification of the contract of August 23, 1950, modified by reducing the acceptable number of subscribers to the plan from fifty to forty-two. An "acceptance" of this modification was signed for the plaintiff corporation by Stanley Grayson as its General Manager.

The defendant subsequently refused to carry out its agreement to provide subscribers contracted by the plaintiff with the prescribed radio time and the plaintiff thereupon brought this suit. The case is now before the court on plaintiff's motion for preliminary injunction restraining the defendant from selling or otherwise disposing of radio time which the defendant will require to perform its contract with the plaintiff. During hearing on this motion plaintiff conceded that preliminary injunction should not be granted but contended that it should be granted the declaratory judgment prayed in the complaint.

However, the defendant challenges the plaintiff's right to maintain this action at all. The plaintiff, defendant contends, is a foreign corporation doing business in Puerto Rico without having qualified under applicable provisions of the insular corporation law to so engage in business in Puerto Rico and is, therefore, by virtue of Section 38 of the Corporation Law of Puerto Rico, without right to maintain this action. Section 38 of the Corporation Law reads as follows: "No foreign corporation doing business in Puerto Rico shall maintain any action in Puerto Rico upon any contract made by it in this Island, unless prior to the making "of such contract, it shall have complied with the provisions of this chapter with regard to qualifying to do business in Puerto Rico. This prohibition shall also apply to any assignee of any such foreign corporation or to any person claiming under such assignee or foreign corporation, or under either of them."

In reply the plaintiff urges first, that this is not a suit on the agreement of August 23, 1950, but is a suit on the "To Whom It May Concern" letter of August 23, 1950. This attempt to construe the "To Whom It May Concern" letter as a separate agreement between the defendant and Grayson is clearly an argument of expediency seeking the substitution of an individual for the corporation to circumvent the statute and is without merit. The two letters of August 23, 1950, obviously were written in the execution of one transaction, the "To Whom It May Concern" letter being supplementary to the letter embodying the terms of the agreement. That letter plainly was intended and delivered to implement the agreement by establishing Grayson's authority as the plaintiff's representative to solicit potential subscribers to the plan. The very nature of the promotional scheme involved made it imperative that Grayson be in possession of some document which evidenced the defendant's participation in the plan and his status as a representative of the plaintiff with authority to solicit subscribers and to contract for placement of the allocated radio time. Without such implementation the campaign contemplated by

the parties would have bogged down in its incipiency. But any enforceable right against the defendant that the plaintiff may have must be found within the terms of the agreement itself.

The plaintiff in the second place urges that, in any event, the provisions of Section 38 of the Corporation Law of Puerto Rico are not applicable in this case, as in the transaction under consideration it was not engaged in doing business in Puerto Rico, but was making an interstate sale, any regulation of which by Puerto Rico would constitute an invalid burden on interstate commerce.

■ The controlling question here is whether the plaintiff was, in the transaction under consideration, doing business in Puerto Rico within the meaning of said Section 38 of the insular corporation law. If it was and the statute is applicable, plaintiff cannot maintain this action, the record revealing that it has not complied with the provisions of insular law relative to foreign corporations qualifying to do business in Puerto Rico. On the other hand, if, as it claims, plaintiff was engaging in interstate commerce in the transaction under consideration, it is well established that Section 38 does not apply and this action is maintainable. See Ismert Hinkle Milling Co. v. Muñoz, 37 P.R.R. 762; Mutual Rice Co. v. Truyol, 52 P.R.R. 7; Sioux Remedy Co. v. Cope, 235 U.S. 197, 35 S.Ct. 57, 59 L.Ed. 193; and, Furst v. Brewster, 282 U.S. 493, 51 S.Ct. 295, 75 L.Ed. 478.

Had the instant transaction been merely a sale of the clocks to the defendant or even to the subscribers to the plan, the plaintiff's contention that it was engaging in interstate commerce might well be ten-able. It is difficult, however, to perceive the whole transaction as anything other than an engagement by the plaintiff in the conduct of a publicity compaign in Puerto Rico. The plan is typical of local publicity and promotional campaigns. It is the business of the plaintiff to conduct publicity campaigns for radio stations in Puerto Rico. (See paragraph 9(b) of the complaint) [1] In the course of such business it contracted with the defendant for the exclusive right for one year to solicit the placement of electric clocks advertising the defendant's call letters and dial settings and for the right to contract with subscribers to the plan for the sale of radio program time prescribed in the agreement of August 23, 1950. The pleadings support the conclusion that the plaintiff did sell the radio time allocated in the agreement to subscribers to the plan. (See paragraph 9(a) of complaint.) [2] The threatened injury, of which plaintiff complains, flows, not from any failure to distribute the clocks, but from the defendant's failure to provide program time to subscribers contracted by the plaintiff.

Considered in this light, plaintiff's contention that the shipment of the clocks from New York to Puerto Rico makes the transaction one in interstate commerce is not convincing. The clocks were merely material with which the plaintiff intended to implement the local publicity campaign. They certainly were not sold to the defendant nor, does it appear that they were sold to the subscribers. They were used, apparently, for promotional purposes—to further that phase of the plan whereunder plaintiff contracted with local business establishments for their purchase of the radio time provided by the defendant under the agreement. Essentially, this was not an agreement for the sale of clocks but

1. "(b) Plaintiff is engaged in the business of conducting special publicity campaigns for radio stations in Puerto Rico and if plaintiff is unable to carry out its obligation to subscribers for programs over the defendant WIBS, plaintiff's reputation and business will have been seriously and irreparably damaged."

2. "(a) Plaintiff has collected from each of the 42 subscribers payment in advance, aggregating more than $10,000, in exchange for which plaintiff has contracted to supply each of the aforesaid 42 subscribers the agreed time on station WIBS; if plaintiff, through no fault of its own, is unable to supply the aforesaid programs on WIBS, plaintiff will be subject to the risk of a lawsuit by or in behalf of each of the aforesaid 42 subscribers, the course and outcome of which plaintiff is unable to predict."

for the conduct of a publicity campaign for Station WIBS, during the course of which plaintiff would sell radio time allocated to it under the plan to subscribing business establishments. The plaintiff, on the one hand was doing promotional work for Station WIBS and doing advertising work for subscribers on the other. In effect, it did nothing more than to erect horological billboards in Puerto Rico for one client and contract for the placement of radio advertising for other clients.

That the transaction under consideration is to be so construed is authoritatively supported. In Brown v. City of Waycross, 233 U.S. 16, 34 S.Ct. 578, 58 L.Ed. 828, the City of Waycross, Georgia, by ordinance imposed a tax on dealers in lightning rods who engaged in the erection of lightning rods within said city. The plaintiff in error was charged with a violation of the ordinance and defended on ground that he conducted his business as an agent for a corporation in St. Louis on whose behalf he solicited orders for the sale of lightning rods, the sale price including the obligation to erect the lightning rods without further charge. Such a transaction, he asserted, constituted interstate commerce which the city could not validly tax. The Court held that the erection of lightning rods on buildings was a business of strictly local character, peculiarly within the exclusive control of state authority, and because such business was wholly separate from interstate commerce, it involved no question of delivery of property shipped in interstate commerce or the right to complete an interstate transaction, but involved only the doing of a local act after interstate shipment had completely terminated.

In General Railway Signal Co. v. Com. of Virginia, 246 U.S. 500, 38 S.Ct. 360, 62 L.Ed. 854, a New York corporation sold certain signal equipment to the Southern Railway of Virginia. In the performance of the contract materials, supplies and equipment were brought into Virginia from New York, but their permanent installation as a railway signal system required attach-

ment to the soil through the use of local labor in digging ditches, construction of foundations and painting. The Court held, under the authority of the Waycross case, supra, that the installation of the signal equipment was local business, separate and distinct from interstate commerce and subject to the licensing power of the state.

And so in the instant case, the work of soliciting subscribers to the plan, the distribution of clocks and the contracting for the sale of the radio time allocated under the agreement was business strictly local in character and entirely separate and distinct from the shipment of the clocks from New York to Puerto Rico. Under the authority of the Waycross case, supra, and the General Signal case, supra, this business was within the authority of Puerto Rico.

An analysis of the details of the promotional scheme under consideration here as well as the allegations of the complaint above referred to, require a conclusion that the plaintiff was doing business in Puerto Rico within the meaning of Section 38 of the Corporation Law of Puerto Rico and that the contract here sued upon was entered into in the prosecution and furtherance of such business. Therefore, under the terms of said Section 38, this action cannot be maintained.

That under the circumstances the suit cannot be maintained in this court is clear. See Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 1237, 93 L.Ed. 1524, wherein it was held that in diversity cases, a federal court is "in effect, only another court of the State" on the theory that a contrary holding would result in discrimination among citizens of the state in favor of those authorized to invoke the diversity jurisdiction of the federal courts.

The plaintiff, being engaged in doing business in Puerto Rico within the meaning of Section 38 of the Corporation Law of Puerto Rico without having qualified to do so under provisions of said insular corporation law prior to the making of the contract upon which this action is brought, is thereby barred from maintaining this suit. The complaint is dismissed.