**HUTTERIAN BRETHREN OF WOLF CREEK AS A CHURCH OF STERLING ALBERTA, CANADA v. HAAS et al.**

**HAAS et ux. v. HUTTERIAN BRETHREN OF WOLF CREEK AS A CHURCH OF STERLING, ALBERTA, CANADA.**

**Nos. 1401, 1437.**

United States District Court,
D. Montana, Great Falls Division.

May 1, 1953.

Howard C. Gee, Lewistown, Ralph J. Anderson, Helena, G. J. Jeffries, Roundup, for Hutterian Brethren of Wolf Creek as a Church of Sterling, Alberta, Canada.

H. Leonard DeKalb, Raymond E. Dockery, Weymouth D. Symmes, Lewistown, for Frank J. Haas and others.

PRAY, Chief Judge.

The court is considering both of the above cases together, since they involve the same parties, same contract and the same land holdings in Fergus County, Montana, and substantially the same facts and questions of law.

No. 1401 is an action for specific performance and to recover damages for alleged breach of contract to convey real property, now pending on motion for summary judgment and to dismiss the complaint.

No. 1437 is an action brought by plaintiffs to cancel the aforesaid contract between the parties, for an accounting of rents and profits and to restore the respective parties to status existing prior to execution of said contract. This case was begun in the State Court and removed by defendant to this court and also is pending on motion to dismiss the complaint, and for summary judgment.

After much time consumed in considering the pleadings, motion, affidavits and supporting and other related papers, and voluminous briefs, it would seem in order to state frankly at the outset that the court is of the opinion that the motion to dismiss in case No. 1401 should be granted, and that the court should of its own motion remand case No. 1437 to the State District Court in which it originated, and from which it was removed to this court.

It is practically conceded that the "Hutterian Brethren of Wolf Creek as a Church of Sterling, Alberta, Canada" is a corporation duly incorporated, organized and existing under and by virtue of the laws of the Province of Alberta, Canada, and that before entering into a contract for and commencing the business undertaken by such corporation in Fergus County, Montana, it was required to comply with certain provisions of Montana law before it could lawfully transact its corporate business in this State; its claim of exemptions as a religious organization is not sustained by the evidence presented here; its further claim that its incorporators and trustees were citizens of the United States is not material here, and would not be admissible in evidence, the presumption being that the incorporators and trustees were all citizens of the State or Country of incorporation, and no proof to the contrary would be admissible in either of these actions. See decision of Chief Justice Taney in Ohio & Mississippi R. Co. v. Wheeler, 1 Black 286, 66 U.S. 286–295, 296, 297, 298, 17 L.Ed. 130, and decisions therein cited.

It was held in Bank of Augusta v. Earle, 13 Pet. 519, 38 U.S. 519, 10 L.Ed. 274, that the artificial person or legal entity known to the common law as a corporation can have no legal existence out of the bounds of the sovereignty by which it is created; that it exists only in contemplation of law, and by force of law; that where that law ceases to operate, the corporation can have no existence. It must dwell in the place of its creation.

In Louisville, Cincinnati and Charleston R. Co. v. Letson, 2 How. 497, 43 U.S. 497, 11 L.Ed. 353, the court held that where a corporation is created by the laws of a State, the legal presumption is, that its members are citizens of the State in which alone the corporate body has a legal existence; and that a suit by or against a corporation, in its corporate name, must be presumed to be a suit by or against citizens of the State which created the corporate body; and that no averment or evidence to the contrary is admissible, for the purpose of withdrawing the suit from the jurisdiction of a court of the United States.

It appears that Frank J. Haas and Lola Haas, his wife, both citizens of the United States, parties of the first part; and Fred W. Woolsey, of Miles City,

Montana, as party of the second part, on the 30th of June, 1947, entered into a certain written contract whereby the Haas's agreed to sell and said Woolsey agreed to buy certain lands and premises therein described situated in Fergus County, Montana, for the total consideration and price of $337,500. That on the 5th day of July, 1947, the said Woolsey sold, assigned and transferred the said contract to the "Hutterian Brethren of Wolf Creek as a Church of Sterling, Alberta, Canada", the Canadian corporation aforesaid; that it appears in evidence that, unbeknown to the grantors, the said Woolsey was acting as the agent of the corporation aforesaid in the negotiation and purchase of said property, and that persons mentioned as interested in the purchase of said lands had never talked to the owners about it, but had driven around the lands on the highways and looked them over; the subject of agency and indispensable parties will be considered later on.

It appears that for over five years since its occupation of the said lands in 1947 this foreign corporation has been conducting an agricultural and ranching business in the State of Montana without qualifying as required by law, until September 23rd, 1952, which was subsequent to commencement of the corporation action, No. 1401, and motion by Haas's to dismiss; and it further appears that no corporation license tax under state law has ever been paid, or that the corporation has ever filed the annual report required by Section 15–1704, R.C.M.1947. Counsel for the corporation claim that subsequent compliance was sufficient. There is found here the violation of a penal statute for over five years, Section 15–1705, R.C.M.1947, without compliance with its provisions.

There seems to be good authority to the effect that when a foreign corporation deliberately and wilfully violates a statute of this nature that a compliance with the act years later is not sufficient and of no avail to the corporate offender. Counsel construes the language of the statute in question so as to enable the foreign corporation to carry on without compliance for a time without limit if in the end when it becomes involved in litigation it then complies with the statute showing its right to do business in the State; that is practically the sense of counsel's construction, which, of course, would render the preceding language of the section of no effect.

Section 15–1703, R.C.M.1947, provides as follows:

"15–1703 (6653) Contracts void if made before compliance with act. If any foreign corporation shall attempt or commence to do business in this state without having first filed said statement, certificate, and consent, required by this act, or without complying with any or all of the laws of Montana relating to the payment of fees or licenses, no contract made by such corporation, or any agent or agents thereof, during said time, shall be enforceable by the corporation until the foregoing provisions have been complied with."

"Contracts void if made before compliance with act", and the statute goes on further to show what is meant by entering into contracts before compliance with the act. "If any foreign corporation shall attempt or commence to do business without having first filed said statement, certificate, and consent, required by this act, or without complying with any or all of the laws of Montana relating to the payment of fees or licenses, no contract made by such corporation, or any agent or agents thereof, during said time, shall be enforceable by the corporation until the foregoing provisions have been complied with."

What are the foregoing provisions to be complied with and when are they to be complied with—before "any foreign corporation shall attempt or commence to do business", "during said time"—which means during the time it was required to comply, and during such time such contracts will not be

enforceable, until such foreign corporation does comply, and compliance must be made before any attempt to do business.

This seems to be a plain and sensible interpretation of the language of that section; to adopt counsel's view would result in emasculating the section and a flat contradiction of the evident intent and purpose of the act.

[6] Section 93–401–15, Revised Codes of Montana, 1947, relating to construction of statutes, states as follows: "Construction of statutes and instruments—general rule. In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." It has been held that "in construing a statute, ordinarily, the words employed must be given their usual meaning, unless it is made apparent from the context of the subject that a different one was intended." Montana Beer Ass'n v. State Board of Equalization, 95 Mont. 30, 25 P.2d 128, 130.

But even if it should later be determined that this court is wrong in its construction of the statute, other evidence shows that the corporation is a violator of other sections of the State statutes, which would raise a very serious question as to its qualifications to begin or maintain any action in federal court. After making such contract, and after commencing and continuing business thereunder for a period of over five years and after commencing an action under that contract in this court, it thereafter finally files its statement or articles of incorporation. However under the authorities that the court deems applicable here, this act on the part of the corporation will not remove the bar of the statute.

Counsel for the defendants have shown that the principal cases relied upon by the plaintiff corporation were based upon statutes unlike the Montana statute in question and refer to actions "maintained", while the latter statute says that contracts are void if made before compliance with the act, and if such foreign corporations shall attempt or commence to do business without having first filed such statement or without complying with all the laws of Montana they shall not be enforceable.

The Montana statute seems to be much more comprehensive, positive and stronger than the ones upon which the above mentioned decisions were based. The violation of this statute is made a misdemeanor by Section 15–1705, R.C.M. 1947.

The situation found in Pittsburgh Construction Co. v. Westside Belt R. Co., 3 Cir., 154 F. 929, 932, seems to bear a close resemblance to the statute and facts in this case; this decision states the rule as follows: "Every contract made for or about any matter or thing which is prohibited and made unlawful by any statute is a void contract, though the statute itself does not mention that it shall be so, but only inflicts a penalty on the offender, because a penalty implies a prohibition, though there are no prohibitory words in the statute." The court further held in this decision that this rule has been generally followed by the courts, and especially by the Supreme Court of Pennsylvania, in a number of cases, which were cited. The Montana statute is even stronger because it in express terms declares the contract void.

The rule laid down in the case of McManus v. Fulton, 85 Mont. 170, 278 P. 126, 130, 67 A.L.R. 690, although not dealing with a foreign corporation, would seem to have application here, and is as follows: "A contract expressly prohibited by a valid statute is void. This proposition has no exception, for the law cannot at the same time prohibit a contract and enforce it. The prohibition of the legislature cannot be disregarded by the courts." The contract of the foreign corporation in the instant case

is declared to be void if made before compliance with the act. Many other cases cited by counsel along the same line of decision would seem to sustain the contention that such contracts are not enforceable.

On the subject of failure to pay fees or file statement, heretofore referred to, Section 25–108, R.C.M.1947, provides: "Forfeiture of right to do business for failure to pay fees or file statement. If any foreign corporation shall fail to file such annual report, or to pay such additional fee or shall file a false report, it shall forfeit its right to do business in this state."

▮ From the facts presented there is an apparent violation here which would disqualify the corporation from doing business in this State, also the failure to pay a license tax would result in the same disqualification, and payment of this tax provided for in Section 84–1514, R.C.M.1947, appears to have been entirely overlooked, unless recently paid, and if so, in Perkins Mfg. Co. v. Clinton Const. Co., 211 Cal. 228, 295 P. 1, 4, the court said: "* * * The law is settled in this state that a subsequent payment of the tax in no way validates prior transactions." Plaintiff claims the corporation is not subject to payment of the tax because it is a religious corporation; the court has heretofore said that the evidence presented does not sustain this claim, and such is the ruling of the court thereon.

The fourth proposition advanced by plaintiff in No. 1437—"that no corporation organized under the laws of a foreign country can hold agricultural property in this State"—has not been taken up for consideration and determination by the court since it appears conclusively to be the duty of the Attorney General or County Attorney to institute proceedings to determine the alien's right to hold agricultural lands or other real property in the State. In Webb v. O'Brien, 263 U.S. 313, 44 S.Ct. 112, 68 L.Ed. 318, the court held that a citizen can have no legal right to enter into a contract involving land with an alien

who cannot legally make and carry out the contract, and in the absence of a treaty to the contrary, a state has power to deny aliens the right to own land within its borders. The following sections of the State statutes have reference to this subject, and also the duties of the Attorney General and County Attorney. 67–1002, 67–1003, 67–1004, 67–1005 and 67–1006, R.C.M. 1947.

And specifically as to case No. 1437 above, which was removed to this court by the said foreign corporation, which was defendant in the action before the State Court. The court is unable to understand how this foreign corporation could remove the above case to the federal court when, as the court has herein disclosed, it has no standing in this court by reason of its evident repeated violations of the aforesaid State statutes of Montana for over five years. It would appear that the State Court was the proper tribunal to consider and determine all such violations of State statutes that have to do with the qualifications of foreign corporations to do business in the State of Montana. While ordinarily the federal courts would have jurisdiction to entertain an action by a foreign corporation on the ground of diversity of citizenship it could not claim the right to begin such an action if it had failed to comply with the State laws governing its qualifications and right to transact business in the State as a necessary prerequisite therefor.

▮ Although the question of remand has not been raised in oral arguments or briefs it would seem that the court could of its own motion send the case back to the court where it originated since it now appears clearly that the corporation was not qualified to remove the case to this court in the first place; it has been determined on the showing made by counsel for the plaintiff that the corporation would not have the right to begin or maintain such an action in federal court, consequently, since it has been wrongfully removed it should be returned. The general rule

seems to be that where the court has any doubt as to a question of this kind it should be resolved in favor of a remand in preference to a dismissal of the action, which the court regards as the other alternative; and therefore it is hereby ordered that this cause, No. 1437, be remanded to the State District Court in and for Fergus County, Montana.

In respect to remand of the action or dismissal there is another subject that has a direct connection here and that relates to the claim that an indispensable party has been omitted in case No. 1401; the court is inclined to the belief that an indispensable party has been omitted in both cases, having reference particularly to one Frank R. Pillings and Fred W. Woolsey, it was in the latter name that the said contract was written and signed; it seems very probably that Fred W. Woolsey is the one to be designated as it appears from the contract that he is the only person concerned as party of the second part.

In the deposition of Darius J. Hofer, acting for the corporation, it appears that his first contact in Montana was Frank Pillings; that he was acting for him at first—that is to say, when Woolsey first contacted Haas, but later affiant admits that when Woolsey was negotiating with Mr. Haas to enter into the contract he (Woolsey) was acting for the corporate plaintiff, so that Woolsey would seem to be the person to be named as an indispensable party, and would be able to disclose the entire transaction, and how it was that he could claim a commission on the purchase, as disclosed by affiant Hofer, and also could, at the same time, act as agent for the corporation and also practice a deception upon Haas; and he could disclose what knowledge he had of the organization of the corporation, when and where effected, and what investigation or inquiry he made to ascertain whether the corporation had made any effort to comply with the statutes of Montana relating to alien and other foreign corporations doing business in the State; and whether he, as agent of the corporation, had made any effort to effect a compliance with the law by such corporation, and what knowledge he had, as such agent of its failure to qualify before attempting or commencing to do business, or whether the entire subject was neglected by both principal and agent.

It would seem that Woolsey's interest in and conduct of an important part of the business transacted, as above indicated, would require that he be entered herein as an indispensable party, in order that justice might be fully administered between the parties and that the rights of the absent person as to his agency or otherwise may be fully disclosed, and any imputations of deceit or fraud be fully explained. Especially should Woolsey have been named as a defendant in No. 1437, the action in the State Court, and such is the Court's decision in that respect. Ford v. Adkins, D.C., 39 F.Supp. 472; Texas and P. R. Co. v. Brotherhood of R. Trainmen, D. C., 60 F.Supp. 263; U. S. v. Washington Institute of Technology, Inc., 3 Cir., 138 F.2d 25.

A recent decision of the Supreme Court seems to have a close relationship to some of the questions now being considered by this court. In Guaranty Trust Co. v. York, 326 U.S. 99, 110, 112, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079, the court held:

"Erie R. Co. v. Tompkins [304 U. S. 64, 58 S.Ct. 817, 82 L.Ed. 1188] has been applied with an eye alert to essentials in avoiding disregard of State law in diversity cases in the federal courts. A policy so important to our federalism must be kept free from entanglements with analytical or terminological niceties.

"Plainly enough, a statute that would completely bar recovery in a suit if brought in a State court bears on a State-created right vitally and not merely formally or negligibly. As to consequences that so intimately affect recovery or non-recovery a federal court in a diversity case should follow State law.

**44**

See Morgan, Choice of Law Governing Proof (1944) 58 Harv.L.Rev. 153, 155–158. The fact that under New York law a statute of limitations might be lengthened or shortened, that a security may be foreclosed though the debt be barred, that a barred debt may be used as a set-off, are all matters of local law properly to be respected by federal courts sitting in New York when their incidence comes into play there. Such particular rules of local law, however, do not in the slightest change the crucial consideration that if a plea of the statute of limitations would bar recovery in a State court, a federal court ought not to afford recovery. * * * And so Congress afforded out-of-state litigants another tribunal, not another body of law. The operation of a double system of conflicting laws in the same State is plainly hostile to the reign of law. Certainly, the fortuitous circumstances of residence out of a State of one of the parties to a litigation ought not to give rise to a discrimination against others equally concerned but locally resident. The source of substantive rights enforced by a federal court under diversity jurisdiction, it cannot be said too often, is the law of the States. Whenever that law is authoritatively declared by a State, whether its voice be the legislature or its highest court, such law ought to govern in litigation founded on that law, whether the forum of application is a State or a federal court and whether the remedies be sought at law or may be had in equity."

Other cases having a bearing on the issues here involved are as follows: Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524; Blake v. McClung, 172 U.S. 239, 264, 19 S.Ct. 165, 175, 43 L.Ed. 432;

"Every one dealing with a foreign corporation is bound to take notice of the statutes of the state imposing conditions upon that corporation in respect to the transaction of its business within the state, just as he must take notice of any mortgage or other incumbrance placed by the corporation upon its property there situated."

United Shoe Machinery Co., v. Ramlose, 231 Mo. 508, 132 S.W. 1133, 1134;

"Where a contract of sale of machinery by a citizen to a foreign corporation which had not complied with the laws regulating foreign corporations and a lease of machinery by the corporation to the citizen were one entire transaction, and the lease was void, because of the failure of the corporation to comply with the laws of the state, the contract of sale must also fail, so that the corporation acquired no title thereunder."

In re Comstock, 6 Fed.Cas. No. 3,078, p. 244;

Tel-Pic Syndicate, Inc., v. Station WIBS, 1 Cir., 1951, 94 F.Supp. 888:

"Tel-Pic Syndicate, Inc., a New York corporation, brought action against Station WIBS, a Puerto Rican corporation, to have a declaratory judgment entered with respect to agreement between the parties, whereby plaintiff was to conduct a publicity campaign. The District Court, Roberts, J., held that plaintiff was not engaged in interstate commerce, and that it could not recover in absence of compliance with statute providing that no foreign corporation, doing business in Puerto Rico, shall maintain any action in Puerto Rico, * * * unless prior to making of such contract, foreign corporation shall have complied with the statute so as to qualify to do business in Puerto Rico."

In view of the position taken by the court in the beginning it remains now only definitely to decide the issues raised by the two motions heretofore described. As before indicated in the

opinion of the court cause No. 1437 should be remanded to the State District Court in and for Fergus County, State of Montana, and cause No. 1401 should be dismissed, and such is the order of the court herein, each party to stand its own costs.